81 F.3d 821
 50 Soc.Sec.Rep.Ser. 536, Unempl.Ins.Rep. (CCH) P 15229B,
96 Cal. Daily Op. Serv. 2401,
96 Daily Journal D.A.R. 4034
James LESTER, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of the Social Security
Administration,* Defendant-Appellee.
 No. 93-36136.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1995.
Decided Nov. 3, 1995.
Amended April 9, 1996.
 
 Ralph Wilborn, Eugene, Oregon, for plaintiff-appellant.
 Ben A. Porter, Seattle, Washington, for defendant-appellee.
 Appeal from the United States District Court for the District of Oregon, Michael R. Hogan, District Judge, Presiding; No. CV-92-6006-HO.
 Before: SCHROEDER,** CANBY, and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge.
 
 
 1
 James Lester challenges the Commissioner's denial of his application for Social Security disability benefits. He argues that the Commissioner erred in failing to take into account the combined impact of his mental and physical impairments in determining whether his condition "equalled" a listed impairment, in disregarding the opinions of his treating physician and examining psychologist, and in rejecting his hearing testimony. We agree with Lester on each of these points. Because the Commissioner would have been compelled to find him disabled if not for these errors, we reverse and remand for payment of benefits.
 
 I.
 
 2
 Lester injured his back in June 1968 while working as a meatcutter and subsequently underwent two laminectomies. He received disability benefits between 1968 and 1974. After 1974, he worked part-time at various jobs, but ceased working altogether in November 1982 due to his worsening back pain.
 
 
 3
 Lester reapplied for disability benefits in 1984. This claim was denied after an administrative hearing. The Administrative Law Judge (ALJ) concluded that he was not disabled at any time up to June 21, 1985, the date of the decision. Lester did not seek judicial review of the 1985 decision. However, in March 1988, he filed a third application for benefits. Only the 1988 application is before us on appeal. Lester was last insured for disability benefits on December 31, 1987. Thus, to qualify for disability insurance benefits, he must show that he became disabled on or before that date.
 
 
 4
 Although the medical record contains materials dating back to the 1970's, our focus is on the period after June 21, 1985 (the date of the ALJ's decision denying Lester's second application for disability benefits).[1] In April 1985, Darrell T. Weinman, M.D., who was Lester's treating physician at the time, offered the following diagnosis: "mechanical back pain, failed low back surgery syndrome and arachnoiditis of the spinal column." Dr. Weinman stated that Lester was limited to sedentary work and "not likely to improve." Robert J. Strunkel, M.D., who also treated Lester in 1985, agreed that his back pain limited him to sedentary work. In addition, Dr. Strunkel noted that he might be suffering from depression.
 
 
 5
 Dr. Strunkel referred Lester to Yung K. Kho, M.D., who specializes in the care of patients with chronic pain. Dr. Kho remained the treating physician from October 1986 on. After their initial meeting, Dr. Kho diagnosed Lester's condition as follows: (1) status post lumbar laminectomy, (2) likely post operative arachnordiculopathy, with (3) chronic myofascial pain syndrome, and (4) suspected pre-existing personality disorder. In subsequent reports, Dr. Kho noted the existence of both a personality disorder and depression, and prescribed antidepressants. To treat the claimant's back pain, Dr. Kho instituted a program of lumbar injections and physical therapy, which provided some relief. In June 1987, Dr. Kho expressed his opinion that Lester was capable of "some sedentary type of employment." By December 1987, however, Lester was again reporting increasing back pain and, in February 1988, Dr. Kho reported that he was "walking as antalgically as ever" and had not benefitted from recent injections. An MRI revealed degenerative changes in the lumbar spine, without bulging or herniation. In May 1988, Dr. Kho noted that Lester was having difficulty walking more than one-quarter of a mile and was "essentially a back cripple."
 
 
 6
 On February 1989, Lester was examined by a psychologist, Ron Taylor, Ph.D., who interviewed him and conducted psychological testing. Dr. Taylor diagnosed major depression, recurrent and severe, and a personality disorder, concluding that: "The impression is that this fifty-three-year old man is currently, and probably has been since 1982, possibly medically, and probably psychologically unfit for any kind of suitable and feasible substantial gainful employment." Dr. Taylor further found that the claimant was markedly limited in his ability: (1) to maintain concentration and attention; (2) to perform activities within a schedule, maintain regular attendance, and be punctual; and (3) to complete a normal workday and workweek without interruption from psychological symptoms and to perform at a consistent pace without unreasonable rest periods. He found Lester to be moderately limited in several other work-related areas.[2]
 
 
 7
 After reviewing Dr. Taylor's report, Dr. Kho wrote a report expressing his agreement with Dr. Taylor as to the restrictions on Lester's mental functioning. In addition to the limitations indicated by Dr. Taylor, Dr. Kho determined that Lester was markedly limited in his ability to travel to unfamiliar places or use public transportation and in his ability to set realistic goals or make plans independent of others. Dr. Kho estimated that all Lester's functional restrictions had existed since 1982.
 
 
 8
 At the administrative hearing, conducted in April 1989, Lester testified that he was unable to engage in chores such as vacuuming, mopping, mowing, or washing dishes. He also testified that his daily activities were extremely limited, and that he stayed in bed most of the time.
 
 
 9
 At the request of the ALJ, Michael Sasser, M.D., a nonexamining psychiatrist, appeared at the hearing to testify as to Lester's mental status. Dr. Sasser first expressed disagreement with Dr. Taylor's interpretation of the psychological testing results. According to Dr. Sasser, Lester had no medically determinable mental impairment that met or equalled the criteria contained in the listing for "Affective Disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 ("Listing § 12.04"). On cross-examination, however, Dr. Sasser acknowledged that Lester suffers from "chronic pain syndrome" and that Lester's testimony, if credited, would demonstrate marked limitations in his activities of daily living.
 
 
 10
 A vocational expert, Victor P. Mihayl, also testified at the administrative hearing. The ALJ inquired whether a person of Lester's education and background who was limited to sedentary work with a sit/stand option and whose pain had a "moderate effect on his concentration and attention and ability to interact with the general public" would be able to perform any type of work. The vocational expert testified that, while such a claimant could not return to Lester's past work, he could perform the jobs of light vehicle dispatcher, general clerk, or customer service representative.
 
 
 11
 The ALJ subsequently issued a decision finding that Lester was capable of performing the three types of jobs mentioned by the vocational expert and, therefore, that he was not disabled. The ALJ made a general finding that Lester's testimony was not credible. Relying on the testimony of Dr. Sasser and Mr. Mihayl, and rejecting the opinion of Dr. Taylor, the ALJ concluded that Lester had no medically determinable mental impairment.
 
 
 12
 Lester requested review of the ALJ's decision by the Appeals Council, submitting additional evidence regarding his mental impairment. The Appeals Council reversed and remanded for a new administrative hearing, concluding that the ALJ had erred in his consideration of the claimed mental impairment. The case was assigned to a different ALJ with instructions that the new evidence be considered. On remand, Lester waived his right to a second hearing and requested that the new ALJ issue a decision on the record, including the new evidence. Again, Lester was found not disabled. Although the ALJ concluded that Lester did have medically determinable mental impairments--specifically, depression and a personality disorder--she rejected the opinion of Lester's treating physician and examining psychologist as to the severity of the functional restrictions resulting from this impairment. According to the ALJ, Lester's mental impairments resulted in only "moderate" limitations on his functional capacity. This time, the Appeals Council affirmed the ALJ's decision, making it the final determination of the Commissioner. The district court granted summary judgment for the Commissioner.
 
 II.
 
 13
 As a threshold matter, we consider whether res judicata precludes Lester from challenging the Commissioner's decision. We conclude that it does not.
 
 
 14
 In rejecting Lester's 1984 claim for disability benefits, the ALJ concluded that he was not disabled at any time up to June 21, 1985, the date of his decision. Lester's 1984 claim did not allege that he was disabled by a mental impairment, and the Commissioner did not consider any evidence pertaining to his mental impairment in denying this claim. However, when Lester reapplied for benefits in 1988, he did allege that he was disabled, at least in part, as a result of depression. In denying his 1988 application, the ALJ concluded that there was no basis for reopening the decision denying Lester's 1984 claim, and applied res judicata to the period up to June 21, 1985.
 
 
 15
 Lester does not challenge the Commissioner's application of res judicata up to the date of the earlier decision. The question is whether that doctrine bars his disability claim for any subsequent period. As we have previously stated, the principle of res judicata should not be rigidly applied in administrative proceedings. Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir.1988). The Commissioner may, as she did here, apply res judicata to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application. Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir.1985), cert. denied, 475 U.S. 1025, 106 S.Ct. 1222, 89 L.Ed.2d 332 (1986). As a general matter, the Commissioner's refusal to reopen her decision as to an earlier period is not subject to judicial review. Id.[3]
 
 
 16
 The Commissioner's authority to apply res judicata to the period subsequent to a prior determination is much more limited. This court has stated that an ALJ's finding that a claimant is not disabled "create[s] a presumption that [the claimant] continued to be able to work after that date." Miller v. Heckler, 770 F.2d 845, 848 (9th Cir.1985). The presumption does not apply, however, if there are "changed circumstances." Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985). An increase in the severity of the claimant's impairment would preclude the application of res judicata. Id. The claimant need not, however, demonstrate that his medical or psychiatric condition has worsened to show changed circumstances. Other changes suffice. For example, a change in the claimant's age category, as defined in the Medical-Vocational Guidelines, constitutes a changed circumstance that precludes the application of res judicata. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir.1988). In addition, the Commissioner may not apply res judicata where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application. Gregory v. Bowen, 844 F.2d at 666. Nor is res judicata to be applied where the claimant was unrepresented by counsel at the time of the prior claim. Id.[4]
 
 
 17
 Here, there are at least two independent factors preventing the Commissioner from applying res judicata to the period after June 21, 1985. First, the 1988 application alleges a mental impairment that was not raised in Lester's 1984 application or addressed in the Commissioner's decision denying that application. Second, the claimant turned 50 shortly after the 1985 decision. The second change affects the Commissioner's application of the Medical-Vocational Guidelines and her consideration of vocational factors. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(g) (defining the age category "approaching advanced age" as those individuals aged 50-54). Each of these reasons independently precludes application of res judicata to the period after the June 21, 1985 determination.
 
 III.
 
 18
 We now proceed to the merits of the claim. Lester first contends that the ALJ applied an incorrect legal standard in assessing whether his combination of impairments equalled a listed impairment. Specifically, he contends that the Commissioner erred by failing to consider the combined effects of his mental and physical impairments in assessing whether his condition was equal to the listing for "Affective Disorders." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. We agree that the Commissioner is required to take into account the combined effect of a claimant's physical and mental impairments in determining whether his condition equals this listing.
 
 
 19
 Conditions contained in the "Listing of Impairments" are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs. 20 C.F.R. § 404.1520(d).[5] Claimants are conclusively disabled if their condition either meets or equals a listed impairment. 20 C.F.R. § 404.1520(d).
 
 
 20
 In determining whether a claimant with a mental impairment meets a listed impairment, the Commissioner considers: (1) whether specified diagnostic criteria ("paragraph A" criteria) are met; and (2) whether specified functional restrictions are present ("paragraph B" criteria). 20 C.F.R. § 404.1520a. The claimant's mental impairment must satisfy both the paragraph A and paragraph B criteria to meet the listings. A claimant who satisfies the diagnostic criteria contained in the listing for "Affective Disorders" must be found disabled, if his condition results in two or more of the following functional limitations:
 
 
 21
 1. Marked restriction in activities of daily living.
 
 
 22
 2. Marked difficulties in maintaining social functioning
 
 
 23
 3. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)
 
 
 24
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 25
 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.B. The purpose of the functional criteria contained in paragraph B is to measure the severity of the claimant's impairment. Id. § 12.00.C. These criteria "represent functional areas deemed essential to work." Id. § 12.00.A. For this reason, a claimant whose mental impairment results in the requisite functional restrictions meets the listing and, accordingly, "is presumed to be unable to work." Id.
 
 
 26
 Even if a claimant's mental impairment does not meet the criteria specified in the listings, he must be found disabled if his condition "is equal to" a listed impairment. 20 C.F.R. § 404.1520(d). In evaluating a claimant with more than one impairment, the Commissioner must consider "whether the combination of your impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a); see also Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir.1987). The claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir.1985) (quoting Dressel v. Califano, 558 F.2d 504, 508 (8th Cir.1977)). In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether his "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3).
 
 
 27
 In this case, the ALJ determined that Lester had both an affective disorder and a personality disorder, but that his mental impairments caused only "moderate" limitations on his functional capacity--not the "marked" restrictions that are required by the listings. In the ALJ's view, any greater limitations in the areas specified by paragraph B were attributable to pain caused by the physical impairments. Therefore, the ALJ concluded, Lester's condition did not meet or equal any listing. The Commissioner reiterated the ALJ's reasoning on appeal: "Because the ALJ correctly found that Lester's pain and depression were 'symptoms and signs' of Lester's back impairment and were not symptoms and signs of any alleged mental impairment, the ALJ properly concluded that Lester did not have a combination of impairments that met or equalled the Listings under Appendix 1."
 
 
 28
 From the ALJ's decision and the Commissioner's argument on appeal, it is evident that an error of law was committed in determining that Lester's impairments were not equal to Listing § 12.04. For purposes of determining whether this listing is equalled, it is irrelevant whether Lester's symptoms resulted solely from his mental impairments or from a combination of his mental and physical impairments. There is no dispute that Lester had significant mental and physical impairments, each of which resulted in some restrictions on his ability to function in the areas specified by paragraph B. Indeed, the medical experts appear to agree that the part of his limitations arising from his physical impairment--acute pain--cannot easily be segregated from the part arising from his mental impairments. Lester's condition, which the medical advisor referred to as "chronic pain syndrome," has both a physical and psychological component. See Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir.1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and that Secretary must consider all available evidence in assessing complaints of pain). Pain merges into and becomes a part of the mental and psychological responses that produce the functional impairments. The components are not neatly separable. Given that the consequences of Lester's physical and mental impairments are so inextricably linked, the Commissioner must consider whether these impairments taken together result in limitations equal in severity to those specified by the listings. If the combined effect of Lester's mental and physical impairments satisfies the paragraph B criteria, then the Commissioner would be required to find that his condition equals in severity the "Affective Disorders" listing and, therefore, that he is disabled. 20 C.F.R. § 1526(a); Sprague, 812 F.2d at 1231.[6]
 
 
 29
 The Commissioner erred as a matter of law in isolating the effects of Lester's physical impairment from the effects of his mental impairment. Instead, she should have considered the combined effect of the claimant's physical and mental impairments in determining whether the functional criteria listed in paragraph B were satisfied.
 
 IV.
 
 30
 If this were the only error committed by the Commissioner, we would be required to remand for consideration of whether the claimant's physical and mental impairments in combination satisfy the paragraph B criteria. However, Lester also challenges the Commissioner's decision to reject the opinions of his treating physician Dr. Kho and his examining psychologist Dr. Taylor. Both doctors provided written reports stating that the claimant is markedly limited in several areas of functioning and has been since 1982. The ALJ's primary reason for rejecting their opinions was that they conflicted with the testimony of a nonexamining medical advisor. In so doing, the ALJ committed an error of law.
 
 A.
 
 31
 Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).[7] As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991). We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).
 
 
 32
 The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).
 
 
 33
 The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. Pitzer, 908 F.2d at 506 n. 4; Gallant, 753 F.2d at 1456. In Gallant, we held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence" and, therefore, did not support the Commissioner's decision to reject the examining physician's opinion that the claimant was disabled. 753 F.2d at 1456. Similarly, in Pitzer, we concluded that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence. 908 F.2d at 506 n. 4.
 
 
 34
 We have, in some cases, upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. E.g., Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir.1989); Andrews, 53 F.3d at 1043; Roberts v. Shalala, 66 F.3d 179 (9th Cir.1995). In Magallanes, we stated that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." Magallanes, 881 F.2d at 752 (emphasis in original). Rather, as we pointed out, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. Id. at 751-52.
 
 
 35
 In Andrews, there was again an abundance of evidence that supported rejection of the opinion, this time that of the examining psychologist: the opinion not only conflicted with the opinions of five nonexamining mental health professionals, but was in conflict with testimony from the claimant himself and with medical reports contained in the record. 53 F.3d at 1042-43. Furthermore, the nonexamining medical advisor was an expert in substance abuse, the area of the claimant's alleged disability, while the examining psychologist was not. Id. at 1042. In addition, the results of psychological testing conducted by the examining psychologist were suspect, as a product of the claimant's drug use. Id. at 1039. In Andrews there was a clear conflict between the examining psychologist's opinion and the overwhelming weight of the other evidence of record, and we concluded that the ALJ was justified in rejecting the psychologist's opinion. Id. at 1043. In short, "[a]n ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Roberts, 66 F.3d at 184 (emphasis added)(upholding ALJ's decision to reject examining psychologist's functional assessment that conflicted with his own written report and test results).[8] "Substantial evidence means more than a mere scintilla, but less than a preponderance." Andrews, 53 F.3d at 1039.
 
 B.
 
 36
 In this case the ALJ's decision to reject the opinion of the treating physician (Dr. Kho) and that of the examining psychologist (Dr. Taylor) was not warranted. The ALJ based her rejection of the treating and examining sources' opinions on the medical advisor's testimony, supplemented only by unsupported and unwarranted speculation that the other doctors were misrepresenting the claimant's condition or were not qualified to evaluate it.[9] In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion.
 
 
 37
 In rejecting the examining psychologist's opinion, the ALJ considered it to be significant that his reports "were clearly obtained by the claimant's attorney for the purpose of litigation." The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner. Ratto v. Secretary, 839 F.Supp. 1415, 1426 (D.Or.1993). As the Ratto court stated: "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." Id. While the Secretary "may introduce evidence of actual improprieties," no such evidence exists here. Id. Although Dr. Taylor acknowledged that he made two minor errors in his interpretation of the psychological testing results, he submitted a supplemental report stating that these minor errors had no effect on his conclusions.
 
 
 38
 The ALJ's decision also notes that Dr. Taylor's report was completed several months after Lester's last insured date. This court has specifically held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir.1988).[10] Finally, the ALJ noted that Dr. Taylor's conclusions were based on "limited observation" of the claimant. While this would be a reason to give less weight to Dr. Taylor's opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has never examined the claimant. 20 C.F.R. § 404.1527(d)(1).
 
 
 39
 The Commissioner also erred in rejecting the opinion of Dr. Kho, the claimant's treating physician. The ALJ's primary reason for rejecting his opinion was that it "was based not on an independent conclusion, but primarily on the prompting of the [claimant's] attorney and Dr. Taylor." The fact that Dr. Kho agreed with the findings of Dr. Taylor provides no basis for rejecting his opinion. If anything, the similarity of their conclusions provides reason to credit the opinions of both. Moreover, the ALJ's statement overlooks the fact that Dr. Kho expressed his opinion that Lester suffered from a personality disorder after his initial examination of the claimant in October 1986 (well before the claimant's last insured date), and the fact that doctors who had examined the claimant even before then had suspected a psychological disorder. The Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments. Embrey, 849 F.2d at 422. She erred in failing to take Dr. Kho's subjective judgments into account.
 
 
 40
 The Commissioner also emphasizes that, according to Dr. Kho's progress notes from the summer of 1987, Lester's back pain responded to treatment. However, by February 1988, Dr. Kho reported that Lester was walking with difficulty and that recent treatments had not helped. At most, this evidence demonstrates that, for a brief period of time, Lester experienced some relief from his back pain. In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a) (emphasis added). Occasional symptom-free periods--and even the sporadic ability to work--are not inconsistent with disability. See Leidler v. Sullivan, 885 F.2d 291, 292 n. 3 (5th Cir.1989); Poulin v. Bowen, 817 F.2d 865, 875 (D.C.Cir.1987). Moreover, we note that Dr. Kho's 1987 statements were made before Lester underwent a comprehensive psychological assessment--and, therefore, before Dr. Kho was aware of the full extent of Lester's psychiatric impairment. Because his later opinion was based on a more complete evaluation of the combined impact of all of Lester's impairments, that opinion should be accorded greater weight. See Sprague, 812 F.2d at 1231.
 
 
 41
 Finally, the ALJ argues that Dr. Kho's opinion as to Lester's mental functioning may be disregarded because he is not a mental health specialist. This argument directly conflicts with this court's decision in Sprague, 812 F.2d at 1232. Like the treating physician in Sprague, Dr. Kho provided treatment for the claimant's psychiatric impairment, including the prescription of psychotropic medication. His opinion constitutes "competent psychiatric evidence" and may not be discredited on the ground that he is not a board certified psychiatrist. Id. Indeed, the treating physician's opinion as to the combined impact of the claimant's limitations--both physical and mental--is entitled to special weight. As the Commissioner's own regulations recognize, treating physicians like Dr. Kho bring a "unique perspective to the medical evidence." 20 C.F.R. § 404.1527(d)(2). An integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments--including the findings and opinions of other experts. The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment. This is particularly true in cases like Lester's, where the parts of the functional restrictions arising from the claimant's physical impairments cannot be separated from the parts arising from his mental impairments.
 
 
 42
 The ALJ's rejection of the treating and examining sources' opinions in favor of the medical advisor's was unsupported by other evidence in the record. The nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion.
 
 V.
 
 43
 Lester also alleges that the ALJ erred in rejecting the testimony that he himself offered at the hearing. Lester testified to severe pain in his lower back and to marked restrictions in his activities of daily living. In her written decision, the ALJ stated: "I find the claimant's testimony regarding his current pain to be exaggerated, not credible, and not supported by credible medical evidence."[11]
 
 
 44
 For the ALJ to reject the claimant's complaints, she must provide "specific, cogent reasons for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.1990). Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (en banc); see also Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir.1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.1993); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir.1988) (Varney I ).
 
 
 45
 In this case, the ALJ acknowledged that there were two medically determinable mental impairments (depression and a personality disorder) and a medically determinable physical impairment ("severe degenerative disc disease of the lumbar sacral spine"). Although the ALJ offered her conclusion that the claimant's complaints were "not credible" and "exaggerated," she did not provide any specific reasons for her disbelief other than a lack of objective evidence. In particular, no reasons were given for rejecting Lester's testimony as to the "marked" limitations on his activities of daily living. The ALJ's general statement that the claimant's testimony was unbelievable is, under Dodrill and Varney I, insufficient to support the rejection of his complaints.
 
 VI.
 
 46
 The remaining question is whether to remand for further administrative proceedings or simply for payment of benefits. Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion "as a matter of law." Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir.1989); see also Pitzer, 908 F.2d at 506 (remanding for payment of benefits where Secretary did not provide adequate reasons for disregarding examining physician's opinion). Similarly, where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, "we will not remand solely to allow the ALJ to make specific findings regarding that testimony." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1401 (9th Cir.1988) (Varney II ). Rather, that testimony is also credited as a matter of law. Id.
 
 
 47
 Because the evidence, when it is given the effect required by law, demonstrates that Lester meets or equals Listing § 12.04, we remand for payment of benefits. See Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir.1993) (remanding for payment of benefits where record established that claimant met Listing § 12.04). The treating physician and examining psychologist both stated that Lester has marked restrictions in attention and concentration that would preclude him from performing tasks in a timely manner, and Lester himself testified to marked limitations in his daily living activities. If the doctors' opinions and the claimant's testimony are credited, then Lester's condition satisfies two of the four criteria contained in paragraph B. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.B.1 & 3.
 
 
 48
 Under Hammock and Varney II, we accept the doctors' opinions and the claimant's testimony as a matter of law and, accordingly, remand for payment of benefits. Whether his limitations arise solely from his mental impairment or from some combination of his mental and physical impairments, Lester meets or equals Listing § 12.04 and is entitled to a conclusive presumption of disability.[12] No purpose would be served by remanding for further proceedings.
 
 
 49
 REVERSED and REMANDED for payment of benefits; The mandate shall issue forthwith.
 
 
 
 *
 Pursuant to P.L. No. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of the Social Security Administration, effective March 31, 1995. In accordance with section 106(d) of the Act, Shirley S. Chater, the Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant. Although the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, we refer to the defendant as "the Commissioner" throughout this opinion for the sake of convenience
 
 
 **
 Judge Tang was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Schroeder was drawn as a replacement. Judge Schroeder was provided with a tape of the oral argument as well as the briefs and other materials received by the other members of the panel
 
 
 [1]
 For the reasons explained infra part II, the June 21, 1985 decision has res judicata effect with respect to the question whether Lester was disabled up to that date
 
 
 [2]
 In a subsequent report, Dr. Taylor acknowledged two errors in his interpretation of the results of MMPI psychological testing. Specifically, Dr. Taylor noted that he had made a plotting error in interpreting the "F" Scale and a typographical error in reporting the Clinical Scale Elevations. According to Dr. Taylor, the correction of these errors "do[es] not, in any significant way, change the clinical picture."
 
 
 [3]
 There is an exception to the general rule that courts may not review the Commissioner's decision not to reopen, where the Commissioner considers "on the merits" the issue of the claimant's disability during the already-adjudicated period. Gregory, 844 F.2d at 666. Where such a de facto reopening occurs, the Commissioner's decision as to the prior period is subject to judicial review. Krumpelman, 767 F.2d at 589 (citing McGowen v. Harris, 666 F.2d 60, 66-68 (4th Cir.1981)). Lester does not argue that there was a de facto reopening here
 
 
 [4]
 Gregory greatly limits the Commissioner's ability to apply res judicata to the period after a prior determination. In Gregory, the Social Security Administration had issued a decision on September 24, 1981 finding that the claimant was not disabled. Her date last insured was September 30, 1981. Despite the short period between the date of the prior decision and the date last insured, this court held that res judicata could not be applied to bar her claim, since she raised a psychological impairment not previously considered. 844 F.2d at 666. We went on to reverse the decision that the claimant was not disabled as of September 30, 1981, finding that the decision was not supported by substantial evidence
 
 
 [5]
 The Commissioner follows a five-step sequential evaluation process in assessing whether a claimant is disabled:
 Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
 Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
 Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
 Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
 Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
 
 
 [20]
 C.F.R. § 404.1520. It is undisputed that Lester has performed no substantial gainful activity since 1982 and that his impairment is "severe." His claim therefore survives steps one and two. Because we conclude that the claimant's condition equals a listed impairment, Lester qualifies for benefits at step three, and it is unnecessary for us to address the Commissioner's application of steps four and five
 
 
 [6]
 Because in this case the effects of the physical and mental limitations are inseparable from a medical standpoint, and thus are inextricably linked, we need not consider whether or under what circumstances such linkage is necessary in order to find that a combination of two different impairments equals a listing. We reiterate, however, that the applicable regulations direct the Commissioner to "review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a) (emphasis added)
 
 
 [7]
 For purposes of this opinion, the term "physician" or "doctor" includes psychologists and other health professionals who do not have M.D.'s. See 20 C.F.R. § 404.1527 (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources)
 
 
 [8]
 Of course, the type of evidence and reasons that would justify rejection of an examining physician's opinion might not justify rejection of a treating physician's opinion. While our cases apply the same legal standard in determining whether the Commissioner properly rejected the opinion of examining and treating doctors--neither may be rejected without "specific and legitimate" reasons supported by substantial evidence in the record, and the uncontradicted opinion of either may only be rejected for "clear and convincing" reasons--we have also recognized that the opinions of treating physicians are entitled to greater deference than those of examining physicians. Andrews, 53 F.3d at 1040-41; see also 20 C.F.R. § 404.1527(d). Thus, reasons that may be sufficient to justify the rejection of an examining physician's opinion would not necessarily be sufficient to reject a treating physician's opinion. Moreover, medical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion
 
 
 [9]
 Indeed, there is some question as to whether there is a genuine conflict between the medical advisor's opinion and the opinions of the treating physician and examining physician, on any material issue. The primary area of disagreement between Dr. Sasser and Drs. Taylor and Kho was not over whether Mr. Lester was severely restricted; the dispute was over the question whether these restrictions resulted from "chronic pain syndrome," from a mental impairment or from both
 
 
 [10]
 In arguing that the date of Dr. Taylor's examination provides a reason for rejecting his conclusions, the Commissioner relies on Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984), in which we stated that "[a]fter-the-fact psychiatric diagnoses are notoriously unreliable." The Commissioner takes this remark out of context. In Vincent, we held that the Commissioner properly rejected the opinion of a psychiatrist who had treated the claimant several years before the relevant period and had not examined him in several years. Id. Vincent thus does not stand for the proposition that the Commissioner is entitled to reject the treating or examining psychologist's opinion, merely because the onset date of disability was before the first date on which the psychologist saw the claimant. As the Second Circuit stated in Schauer v. Schweiker, 675 F.2d 55 (2d Cir.1982), the case on which Vincent relies: "Diagnosis of a claimant's condition can properly, of course, occur after the onset of the impairment." Id. at 60 n. 5
 
 
 [11]
 In the "Findings" section of her opinion, the ALJ states: "The claimant's testimony on his pain limitations was not fully credible and not fully supported by the objective medical findings, as explained in detail in the analysis section of the decision." Although the "Analysis" section discusses why the ALJ believed that the opinions of the treating and examining physicians should be rejected, it does not (contrary to the ALJ's statement) provide any specific reasons for discrediting Lester's testimony
 
 
 [12]
 To be precise, Lester's condition would meet this listing if the paragraph B restrictions resulted solely from his mental impairment. However, he would equal the listing if these restrictions arose from a combination of mental and physical impairments. For the reasons explained supra part III, it is unnecessary to determine whether his functional restrictions arise solely from his mental impairment or from a combination of mental and physical impairments