107 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Margaret GEIL, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of the Social Security
Administration, Defendant-Appellee.
 No. 95-35821.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 9, 1997.
Decided Jan. 28, 1997.
 
 Before: ALDISERT*, PREGERSON and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The parties are familiar with the facts of this case and, therefore, we need not restate them. Appellant Margaret Geil is already receiving benefits for her liver disease pursuant to the Secretary's determination that she was disabled as of March 17, 1993. She appeals the Secretary's denial of her application for Social Security disability benefits only for a precise period of time--February 15, 1984, through December 31, 1986. It is not controverted that Geil is now totally disabled because of severe chronic hepatitis; indeed, she is now a candidate for a liver transplant. The sole issue is whether she was also disabled during the period between 1984 and 1986.
 
 
 3
 Geil's appeal raises two closely related questions: (1) whether the Secretary erred by disregarding Geil's treating physicians' opinions that her impairments met or equaled those listed in the Listing of Impairments for chronic liver disease; and (2) whether the Secretary erred by failing to develop the record concerning this question.[1] We conclude the Secretary erred. Because the totality of Geil's impairments would have rendered her presumptively disabled, we reverse and remand for payment of benefits.
 
 
 4
 We review the judgment of the district court de novo. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.1996). The Secretary's findings must be reversed if they are tainted by legal error or if the denial of benefits is unsupported by substantial evidence. Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir.1993). Substantial evidence is more than a mere scintilla, but less than a preponderance. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). In evaluating the evidence, we look at the record as a whole, weighing both the evidence that supports and detracts from the Secretary's conclusion. Id.
 
 
 5
 Geil met the insured-status requirements for disability benefits on February, 15, 1984, and continuously thereafter until December 31, 1986. Thus, to qualify for disability benefits, Geil must establish that she had a disability on or before December 31, 1986. Geil contends the Secretary erred in determining whether she was disabled on or before that date by disregarding evidence from treating physicians that her impairments met or equaled those listed in the Listing of Impairments for chronic liver disease. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 5.05(F). She further argues that her impairments equaled those listed for chronic liver disease and the Secretary, therefore, erred by not finding her presumptively disabled under 20 C.F.R. § 404.1520(a), and (d).
 
 
 6
 If at any point during the five-step, disability-determination process the agency determines that an applicant for benefits is or is not disabled, further review is not necessary. 20 C.F.R. § 404.1520(a). At the third step of the disability determination process, "[c]laimants are conclusively disabled if their condition either meets or equals a listed impairment [in Appendix 1]." 20 C.F.R. § 404.1520(d); Lester v. Chater, 81 F.3d 821, 828 (9th Cir.1995). At this step, the ALJ stated:
 
 
 7
 Pursuant to the third step of the sequential evaluation process, the claimant's impairment has not met or equaled the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 during either the period from February 15, 1984 through December 31, 1986, the date the claimant last met the special insured status requirements of the Act for the purpose of her Title II application,.... Specifically, the record fails to establish the existence of a listed impairment pursuant to the criteria of section 5.05 of Appendix 1.
 
 
 8
 ER 7.
 
 
 9
 The ALJ set forth the correct standard, i.e., whether Geil's impairments met or equaled those in § 5.05 of Appendix 1. However, his decision at this step, and the judgments of the Appeals Council and district court, focus exclusively on whether Geil strictly met the listed clinical criteria for chronic liver disease in § 5.05--that is, whether she presented evidence of repeated abnormalities of prothrombin time. ER 59-63.
 
 
 10
 Section 5.05 of Appendix 1, the listed impairment for chronic liver disease, provides in relevant part:
 
 
 11
 5.05 Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease). With:
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 F. Confirmation of chronic liver disease by liver biopsy (obtained independent of Social Security disability evaluation) and one of the following:
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 3. Hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction.
 
 
 18
 A liver biopsy taken in September of 1983 confirmed that Geil had "chronic persistent hepatitis." ER 60, SER 48. Medical evidence documents a history of chronic hepatitis. ER 5. Records of Geil's treating physician, Dr. William L. Toffler, evidenced repeated complaints of fatigue and malaise, jaundice, as well as repeated intermittent diarrhea and hepatic dysfunction on a paroxysmal basis. ER 6. Dr. Toffler also found persistent body chemical and enzyme abnormalities and hepatic dysfunction. ER 52-53.
 
 
 19
 A letter from Dr. Toffler stated that Geil "unequivocally had hepatitis B and that he believed she "does meet the criteria for chronic liver disease" set forth in § 5.05. He stated:
 
 
 20
 She certainly had confirmation of her chronic liver disease by liver biopsy as well as evidence of hepatic cell inflammation documented by repeated abnormalities of enzymes over a period of more than a year. In addition, a note by me dated January 16th, 1984, almost one year after her initial presentation with Hepatitis B, notes that the spleen was '... again large, possibly larger than it was on previous exam.' Certainly ... suggestive of some degree of portal hypertension.
 
 
 21
 SER 48.
 
 
 22
 A letter from another treating physician, Dr. Kent G. Benner, stated:
 
 
 23
 Gell [sic] suffered an episode of hepatitis attributed to hepatitis B in December of 1992 [sic][2] and had persistent liver chemistry elevations through at least November of 1983. Serologic testing revealed anti-HBc and anti-HBs to both be positive in January of 1983 and May to June of 1983. Liver biopsy performed in September of 1983 demonstrated chronic persistent hepatitis and prothrombin time at that time was normal at 11.7 sec. Throughout this period Mrs. Gell [sic] was symptomatic with varying degrees of fatigue which disabled her from work. Office notes document a palpable spleen consistent with splenomegaly from December of 1983 through October of 1984.
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 In retrospect I suspect Mrs. Gell [sic] suffered chronic hepatitis C back in the early 1980s, and that this was responsible for her persistent liver chemistries on 3/19/83 and 1984 as well as the chronic hepatitis noted on her liver biopsy from 1983. Our review of that liver biopsy suggested chronic hepatitis with bridging fibrosis. In view of the positive hepatitis B surface antibody at that time ..., I think her ongoing hepatitis activity was due to hepatitis C. Splenomegaly noted on physical exam suggests she suffered portal hypertension at that time. Consequently, Mrs. Gell [sic] appeared to have chronic hepatitis C and previous hepatitis B as early as 1983 and 1984 with evidence of portal hypertension and splenomegaly as well as debilitating fatigue. I think it is reasonable to consider her disabled from chronic liver disease at that time.
 
 
 27
 SER 49.
 
 
 28
 The Secretary rejected the treating physicians' opinions and, without reference to particular criteria in § 5.05 or analysis regarding the equivalency of Geil's impairments to those criteria, concluded that she did not meet or equal the listed criteria. SER 50. The district court's judgment affirming the Secretary's denial of benefits is based almost exclusively on the absence of documentation in the record evidencing "repeated abnormalities of prothrombin time," one of the specified criteria for chronic liver disease. ER 60-63.
 
 
 29
 In disability cases, a treating physician's opinion is given special weight. Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir.1993). When treating physicians' opinions are not contradicted by another doctor, "clear and convincing reasons are required to reject the treating doctor's ultimate conclusions." Lester v. Chater, 81 F.3d at 830. The Secretary must give weight not only to treating physicians' clinical findings and interpretation of test results, but also to their subjective judgments. Id. at 832-33. Further, in Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 442 (9th Cir.1983). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," being especially diligent to ensure favorable as well as unfavorable facts are elicited. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir.1992) (citations omitted).
 
 
 30
 At the administrative hearing, the ALJ did not question Geil about her symptoms on or before December 31, 1986. The ALJ also failed to make inquires to Geil's treating physicians about whether the duration and severity of her impairments met or equaled the criteria listed in § 5.05. The Appeals Council subsequently rejected or substantially discredited the treating physicians' opinions that Geil's symptoms constituted chronic liver disease under § 5.05 of the Listed Impairments on or before December 31, 1986. The Secretary failed to proffer any clear and convincing reasons for rejecting these opinions. At oral argument, the government conceded that no contrary opinions to those of Geil's treating physicians existed in this case.
 
 
 31
 When the Secretary fails to provide adequate reasons for rejecting treating physicians' opinions, we credit those opinions as a matter of law. Lester, 81 F.3d at 834. We find the ALJ failed to meet his burden of developing the administrative record concerning Geil's impairments. Further, the Secretary and district court erred by using conclusory statements regarding Geil's failure to meet the listed criteria of § 5.05 and by rejecting treating physicians' opinions in favor of a strictly technical reliance on the absence of documentation of repeated abnormalities of prothrombin time.
 
 
 32
 The uncontroverted opinions of Geil's treating physicians lead us to conclude as a matter of law that the totality of her impairments equaled those listed for chronic liver disease in § 5.05 of Appendix 1. See Lester, 81 F.3d at 834. Accordingly, Geil was entitled to a conclusive presumption of disability at step three of the disability determination process. We find no purpose that would be served by remanding for further proceedings other than for calculation of benefits.
 
 
 33
 REVERSED and REMANDED for payment of benefits.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts in this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The administrative law judge's decision became the final decision of the Secretary of Health and Human Services when the Appeals Council found no basis for reversal. SER 50-51. The treating physicians' opinions in this case were not sought by the ALJ and, therefore, not a part of the record at the time his decision was issued on January 28, 1994. However, the physicians' opinions were, appropriately, presented to the Appeals Council and formally part of the record when the Council denied Geil's appeal in October, 1994
 
 
 [2]
 The record and the sequential organization of Dr. Benner's letter indicate this date should be 1982, not 1992