FILED

NOT FOR PUBLICATION

MAY 01 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZACHARY M. MERRITT,<br><br>         Plaintiff - Appellant,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner,<br>Social Security Administration,<br><br>         Defendant - Appellee. | No. 12-35942<br><br>D.C. No. 3:11-cv-05849-BHS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Submitted April 7, 2014[**]
Seattle, Washington

Before: HAWKINS, RAWLINSON, and BEA, Circuit Judges.

"We review the district court's order affirming the Commissioner's denial of

benefits de novo to ensure that the Commissioner's decision was supported by

substantial evidence and a correct application of the law," and affirm. *Valentine v.*

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (internal quotations and alterations omitted).

1. Merritt argues that the ALJ failed properly to evaluate the medical evidence. We agree with the magistrate judge that any error in failing to discuss the global assessment of functioning ("GAF") scores given to Merritt by several of his providers was harmless because "the mere fact that low GAF scores may have been assessed by [Merritt's] mental health treatment providers is not in itself sufficient to require the adoption of [functional] limitations stemming therefrom."

We conclude that the ALJ did not err in giving Dr. Joseph's July 2007 medical opinion "little weight." The ALJ identified "specific and legitimate reasons" to reject this opinion, including subsequent treatment records which reflected Merritt's positive response to treatment. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal quotation marks omitted). While we conclude that the ALJ erred by failing to give "specific and legitimate reasons" to reject Dr. Joseph's December 2008 medical opinion, we nonetheless find this error to be harmless. The ALJ reviewed Dr. Joseph's December 2008 examination of Merritt and determined that it should be given "little weight" because it was "not consistent with the minimal findings on examination." However, Dr. Joseph's findings that Merritt "continue[d] to exhibit significant depressive and anxious symptoms" and

2

"appeared psychomotor retarded" are not "minimal." Still, Dr. Joseph's December 2008 opinion was simply that "[i]t is unlikely that [Merritt] could function adequately in the *typical* work setting." (emphasis added). The ALJ found, based on Dr. Dooley's medical opinion, that Merritt had the residual functional capacity to perform in a work setting which was "limited to simple, repetitive tasks with no public contact and only occasional interaction with coworkers." Such limitations do not constitute a "typical work setting." Likewise, we find that even if the ALJ erred in rejecting a portion of Dr. Moore's January 2008 medical opinion, this error was harmless because Dr. Moore merely concluded that Merritt had "marked limitations" in his "[a]bility to respond appropriately to and tolerate the pressures and expectations of a *normal* work setting." (emphasis added).

We also conclude that the ALJ did not err by "failing to fully discuss" Dr. Shelepova's examination records because Merritt does not point to any particular record from Dr. Shelepova which would establish the existence of work-related limitations. Finally, we reject Merritt's argument that the ALJ erred by focusing on Part III of Dr. Peterson's Mental Residual Functional Capacity Assessment ("MRFCA") evaluation, as opposed to Part I. As the magistrate judge correctly concluded, "the ALJ was not required to consider, let alone adopt, the mental functional limitations checked in Section I of the MRFCA form."

3

2. Merritt argues that the ALJ erred in finding his own testimony concerning the intensity of his symptoms not credible. We conclude the ALJ provided "clear and convincing" reasons for rejecting Merritt's testimony regarding the severity of his symptoms. *Lester*, 81 F.3d at 834 (internal citation and quotation marks omitted). The ALJ reasoned that Merritt's "interest in starting a new job is not consistent with [the] marked limitations in the ability to tolerate work pressures" about which Merritt testified. The ALJ also relied on recent treatment records which showed that Merritt missed his mental health sessions frequently. While the ALJ did not question Merritt as to why he missed his appointments,[1] this fact alone does not require us to find that the ALJ erred because, as the magistrate judge

---

[1] Social Security Ruling 96-7p states that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements (July 2, 1996), 1996 WL 374186, at *7. However, SSR 96-7p goes on to state only that the ALJ "*may* need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual . . . does not pursue treatment in a consistent manner." *Id.* (emphasis added). Therefore, SSR 96-7 does not require, as the dissent argues, that the ALJ ask the claimant why he did not pursue regular medical treatment. In other words, unlike immigration cases where contradictions must be pointed out by the immigration judge to allow an alien to explain, here the ALJ must simply "consider" explanations if the applicant offers them. There is no requirement the ALJ note the contradiction in the record and ask the applicant for explanations. Here, there were no explanations worthy of acceptance.

found, "the medical record [Merritt] cites to support his argument fails to show his relationship problems prevented him from being able to pursue treatment." Moreover, Merritt has not presented any evidence to suggest that his failure to attend treatment "was attributable to [his] mental impairment." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

3. We reject Merritt's argument that the ALJ erred in finding Merritt's mother's testimony to be "not entirely credible." The ALJ provided germane and specific reasons for rejecting Ms. Merritt's testimony when he found her testimony was inconsistent with Merritt's ability "to function independently despite his symptoms." *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

**AFFIRMED.**

*Merritt v. Colvin*, 12-35942

HAWKINS, Senior Circuit Judge, dissenting:

I would reverse and remand with instructions to re-open the record before the ALJ. For me, this appeal rises or falls on the strength of the ALJ's adverse credibility determination. A central point of that determination is whether, as a part of making such a determination, the ALJ could properly rely on Merritt's having missed treatment sessions. Here, the ALJ failed to question Merritt about his failure to attend counseling, leaving the record silent as to Merritt's reasons for doing so. The ALJ then relied on Merritt's having missed his treatment sessions in making his adverse credibility determination. This is contrary to the agency's regulations (SSR 96-7p), which, while permitting the ALJ to make an adverse credibility determination based on a claimant's failure to seek medical treatment, also contains important procedural safeguards: The ALJ is to ask the claimant why medical treatment was not sought and the ALJ must consider the claimant's reasons for failing to do so.[1] This must be done *before* entering an adverse credibility determination on that basis. The ALJ's failure to do what the agency's own regulations require was error and cannot be fairly described as harmless.

---

[1] Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing The Credibility of an Individual's Statements (July 2, 1996), 1996 WL 374186, at *7.