**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DONNA MARIE GALLANT,

Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

Defendant-Appellee.

No.    18-35425

D.C. No. 3:16-cv-00258-SLG

MEMORANDUM*

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued and Submitted June 13, 2019
Anchorage, Alaska

Before:  TASHIMA, W. FLETCHER, and BERZON, Circuit Judges.

Because of a traumatic brain injury in September 2018 and preexisting

mental health conditions, Donna Marie Gallant was found disabled by the Social

Security Administration in April 2009.  Three years later, in April 2012, the Social

Security Administration determined that Gallant was no longer disabled, and thus

no longer eligible for benefits.  An Administrative Law Judge ("ALJ") agreed, and

---

\*    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

a district court upheld the ALJ's decision. We reverse. The ALJ committed two legal errors during the adjudication of Gallant's case that require reconsideration of whether Gallant was in fact disabled as of April 2012.

1. To conclude that a claimant is no longer disabled under the Social Security Administration's regulations, the Commissioner must show that the claimant has experienced medical improvement since he or she was determined to be disabled. 20 C.F.R. § 404.1594(a), (b)(1). The Commissioner must then show that the claimant's "medical improvement is related to [the claimant's] ability to work." *Id.* § 404.1594(a), (b)(3). These are separate, albeit related, inquiries.

To assess whether a claimant has experienced medical improvement, an ALJ must compare the current "medical severity of [the] impairment(s) . . . present at the time of the [claimant's] most recent favorable medical decision . . . to the medical severity of [those] impairment(s)" at the time of that prior decision. *Id.* § 404.1594(b)(7). In making that comparison the ALJ must examine "the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)" on each date. *Id.* § 404.1594(b)(1). If the ALJ determines that the claimant experienced medical improvement, the ALJ then considers whether that improvement is related to the claimant's ability to work, assessing whether the improvement has increased the claimant's "functional capacity to do basic work activities." *Id.* § 404.1594(b)(3).

2

Here, the ALJ did not properly analyze whether there was medical improvement in Gallant's preexisting impairments between April 2009 and April 2012. Nothing in the ALJ's opinion addresses the medical severity of Gallant's impairments in April 2009. Instead, the ALJ concluded there was medical improvement because Gallant suffered only "minimal limitations" from her mental health impairments in 2012 and had received less treatment for her impairments between 2009 and 2012 than before. But, as discussed, the ALJ was first required to compare the medical severity of Gallant's traumatic brain injury and mood disorder in 2009 and 2012, by considering the symptoms, signs, and laboratory findings associated with those impairments in both those years. Neither frequency of treatment nor the limitations caused by an impairment are a symptom, sign, or laboratory finding. *See id.* § 404.1594(b)(1)–(2) (distinguishing medical severity of impairment from limitations caused by impairment).

2. The ALJ further erred in giving no weight to the report submitted by Dr. Russell Cherry, a psychologist who examined Gallant in August 2013. Dr. Cherry diagnosed Gallant with a mood disorder caused by a traumatic brain injury, and opined that Gallant could not engage in competitive employment because of that disorder.

The ALJ did not state specific and legitimate reasons supported by substantial evidence for entirely disregarding Dr. Cherry's report. *See Garrison v.*

3

*Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ noted that Dr. Cherry found that Gallant had "average intellectual and academic functioning" and suggested that this finding was not consistent with Dr. Cherry's conclusion that Gallant had a disabling mood disorder. But a person's intelligence has no bearing on whether or not that person has a mood disorder. *See* Diagnostic and Statistical Manual of Mental Disorders, 293.83 Mood Disorder Due to a General Medical Condition 401–05 (4th Ed. 2000).

The ALJ also provided the following explanation for not crediting Dr. Cherry's opinions:

> [W]hile '[Traumatic Brain Injury] literature' may describe persisting mood and personality changes despite normal MRI findings, this is not necessarily the case here, though I acknowledge that the claimant continues to experience related limitations, if not as severe as Dr. Cherry believes.

This statement provides little reason to discredit Dr. Cherry's opinion. It notes that Dr. Cherry's opinion was *consistent* with the medical literature regarding traumatic brain injuries, and that the ALJ nonetheless disagreed with Dr. Cherry's conclusion, without expressing any reason for the disagreement.

Finally, the ALJ appeared to discredit Dr. Cherry's opinion because Dr. Cherry's opinion largely relied on Gallant's subjective reports, as well as the reports of Gallant's mother. It is completely appropriate for mental health professionals to rely on their patient's subjective reports. Thus, a psychologist's

4

reliance on subjective reports, without more, is not a legitimate reason for discrediting the psychologist's opinion. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[T]he rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.").

A mental health practitioner's reliance on a claimant's subjective reports can be a legitimate basis for discrediting the practitioner's opinions if the ALJ also provides legally sufficient reasons to discredit the claimant's testimony. *Id.* But here, the ALJ did not provide clear and convincing reasons for discrediting Gallant's testimony regarding her irritability, frustration, and ability to persist in a competitive workplace environment, stemming from her mood disorder and traumatic brain injury. Many of the ALJ's reasons for discrediting Gallant's testimony did nothing to undermine Gallant's testimony. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). For example, it is not surprising or unusual that the majority of Gallant's complaints related to her mood were also "related to relationship issues between the claimant and her mother, the claimant's feelings towards the individuals who allegedly caused the motor vehicle accident in which the claimant was involved, relationship issues between the claimant and her significant other, and the claimant's issues with parenting." People usually describe their mood within the context of their relationships and experiences.

Other reasons provided by the ALJ for discrediting Gallant mischaracterize the record. For example, the ALJ stated that Gallant had stopped counseling in September 2011, but the record indicates that Gallant had seen a counselor in January 2012. In addition, the ALJ stated that "Dr. Woods' examination records reveal no significant mental status abnormalities." But these records do not include any mental status examinations; it is thus unsurprising that those records did not reveal "significant mental status abnormalities."

\* \* \*

As the ALJ committed legal error during his consideration of whether Gallant had experienced medical improvement and during his evaluation of Dr. Cherry's opinions, we reverse the judgment of the district court with instructions to remand to the ALJ for reconsideration consistent with this disposition.

**REVERSED AND REMANDED.**