

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of the Social Security Administration, effective March 1, 1997, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is substituted, therefore, for

JUDGMENT

Based on the record,

IT IS ORDERED AND ADJUDGED that this action is dismissed.

**Jeanne WILLIS, Plaintiff,**

v.

**John J. CALLAHAN,[1] Acting Commissioner, Social Security Administration, Defendant.**

**No. CIV. 97–237–FR.**

United States District Court,
D. Oregon.

Oct. 6, 1997.

Shirley S. Chater as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Laurie B. Mapes, Jeff C. Mapes, Scappoose, OR, for Plaintiff.

Kristine Olson, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, OR, Sunil P. Abraham, Sp. Asst. U.S. Atty., Seattle, WA, for Defendant.

## OPINION

FRYE, District Judge:

The plaintiff, Jeanne Willis, brings this action pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits.

## BACKGROUND

Jeanne Willis filed applications for a period of disability and disability insurance benefits (DIB) on January 31, 1994, with a protective filing date of January 13, 1994, alleging that she became disabled within the meaning of the Act on June 25, 1993. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Willis, represented by her lawyer, appeared and testified before an Administrative Law Judge (ALJ) on July 6, 1995, and on September 28, 1995, as did several other witnesses.

On January 24, 1996, the ALJ issued a decision finding that Willis was not disabled within the meaning of the Act and therefore not entitled to DIB. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## FACTS

1. *Willis' Background*

Willis was forty-four years old at the time of the hearing. She has a bachelor's degree in education and has completed two-thirds of the course work necessary for a master's degree in psychology. Willis is a certified vocational consultant and has worked in vocational rehabilitation. She has supervised a group of sixty employees within the Workers' Compensation Division of the State of Oregon. Her last job was Director of Education and Development of Staff at Dammasch State Hospital. She left that position on June 25, 1993 due to the symptoms of fibromyalgia.[2] Before leaving that job, Willis had reduced her hours to three-quarter time and later to half-time.

Willis completed a six-month program at the Oregon Health Sciences University (OHSU) for patients with fibromyalgia. The program includes education, support groups, and monitored exercise therapy. There is no cure for fibromyalgia. While in the program, Willis walked for exercise; however, she found walking so exhausting that she would have to go home and sleep. She has since discontinued the walking program.

Before her illness, Willis jogged, took ballet classes, exercised at a club, met at least weekly with friends to socialize, attended church every week, and worked in a job which included travel around the State of Oregon. At the time of the hearing, Willis was not employed. She testified that she was unable to exercise, rarely saw her friends, and went to church only on major religious holidays. Even when she went to church, she testified that she was unable to sit through the entire service. Her seventy-eight year old mother-in-law cleans the family home, and her husband and teenage daughter do the grocery shopping.

Willis, who is familiar with the concept of secondary gain from her rehabilitation work, denies that she is using her illness in any way. She contends that it is humiliating and embarrassing to have people think that secondary gain is a possible reason for her illness. She testified that work is 100% easier than fatigue and pain.

Willis takes five prescribed medications: one for restless legs,[3] a sleeping pill, an antidepressant, a thyroid medication which she has taken since she was a teenager, and pain medication. She has constant pain in most areas of her body for the entire day. Her muscles alternate between burning pain and deep, throbbing pain. Willis feels sleepy all of the time, no matter how much sleep she gets. Her concentration and memory have been affected; she is unable to comprehend information in the morning hours, to the point that she cannot read a morning newspaper and understand it. Cold weather or air conditioning cause the pain in her neck and shoulders to worsen. To combat cold, Willis frequently uses heating pads.

On most days, Willis engages in little activity before noon or one o'clock, when she showers and dresses. On her better days, she is able to be active on a limited basis for

2. Fibromyalgia is a syndrome of diffuse aching, pain, and stiffness, accompanied by multiple tender points around the body. It is often seen with other symptoms, including sleep disturbance; irritable bowel or bladder; peripheral vascular instability; sensitivity to weather changes, temp-erature, or stress and activity level; and chronic fatigue.

3. When her legs have a crawling sensation under the skin and jerk enough to awaken her at night.

two to three hours out of her best eight hours of the day. She then has to take a nap. The rest of the day she sits, lies on the couch, or sleeps. Two or three days a month, she is so sleepy that she is unable to get out of bed at all. Willis has had to cancel social engagements at the last minute so often that her friends do not try to make advance plans with her. On the few occasions that friends have come to Willis' home to visit, she has had to leave the group in order to lie down, or her friends have left early so that she could lie down.

Willis' husband testified that for the first twenty years of their marriage, Willis was a very driven, high-energy person who worked full time, raised two children, engaged in many activities, and took full care of their home. He stated that she has changed from a woman who would chastise him for taking a nap to a woman who naps and watches television and does little else. According to her husband, during the best eight hours of a typical day, Willis is in bed half of the time.

### 2. *Medical Evidence*

Dr. John Garvey, Willis' internist, first diagnosed fibromyalgia as the disease from which Willis suffered in the spring of 1992. She was referred by Dr. Garvey to Dr. Robert M. Bennett, Director of the Division of Arthritis and Rheumatic Diseases at the OHSU, who agreed with the diagnosis of Dr. Garvey. Dr. Bennett told Willis to reduce her work load to three-quarter time, and later to half-time, before concluding that Willis was totally disabled.

Dr. Bennett reexamined Willis on September 12, 1995. He concluded from her high score on an internationally used fibromyalgia impact questionnaire that Willis had "fairly severe fibromyalgia." Tr. at 284. To test Willis for malingering, Dr. Bennett examined trigger points that are not widely published in medical literature and are not "known by the average doctor, not specializing in this area, let alone the non-medically trained patient." Tr. at 285. Willis had tenderness at nine of these trigger points. Dr. Bennett concluded:

> The patient's degree of fibromyalgia severity is compounded by the restless leg symptoms and dysthymia. She could not be employed on a competitive basis. The

problem with disability in fibromyalgia is not so much one of not being able to physically do a specific task, but rather the effects of activity in exacerbating the pain and increasing fatigue. Patients with fibromyaglia [sic] typically have flares of these symptoms precipitated by their work which leads to frequent leaves of medical absence. The bottom line is that patients with severe fibromyalgia, such as Jeanne, cannot be employed on a regular basis with any reliability.

*Id.* In a letter dated October 3, 1995, Dr. Bennett reported that Willis' IGF–1 level had dropped by 90 ng/ml over three years. The normal age-related decline for Willis over three years would have been 10 ng/ml. Dr. Bennett was of the opinion that the rapid drop was indirect objective evidence of the severity of her disease.

Dr. Ronald Fraback reviewed Willis' medical records and concluded that she has fibromyalgia and "significant depression which may be associated [with] musculoskeletal pain." Tr. at 221. He was of the opinion that, if Willis had no mental disorder, she could return to work in a sedentary or light occupation. He opined that there was nothing to indicate that the fibromyalgia alone caused a disability which would preclude Willis from returning to a sedentary occupation.

Dr. Peter Bonafede reviewed Willis' medical records and made the following comments: (1) there is no documented pathology for fibromyalgia because it is a chronic pain syndrome; (2) Willis' medical records do not contain an objective description of any limits on her functional limitations; and (3) based on his knowledge of fibromyalgia, and without the benefit of examining Willis, she should be employed in a sedentary capacity with sufficient breaks. After noting that Dr. Bennett had recommended to Willis that she decrease her work load, even to the point of not working, Dr. Bonafede concluded: "I do not have sufficient information to evaluate whether these are reasonable limitations. In general terms, I do believe that patients with fibromyalgia are best served by living as normal a life as possible, including in the work setting. I would recommend sedentary

activities as I have described above." Tr. at 225.

### 3. *The ALJ's Findings of Fact*

The ALJ found that Willis had not engaged in substantial gainful activity since June 25, 1993. He found that Willis suffered from the severe impairments of fibromyalgia and depression, even though Willis denied having any problems with depression. The ALJ determined that these severe impairments, considered both separately and in combination, are not equivalent to the listed impairments which are conclusively considered disabling. Willis does not contest these findings.

The ALJ discredited the testimony of Willis and her friends and family about the severity of her symptoms as follows: "What cannot be accepted without objective corroboration, is the alleged severity and resultant limitations. Just as in the cases evaluating pain, disabling impairments require the existence of 'laboratory or clinical' evidence rather than mere subjective complaints." Tr. at 16 (citation omitted). The ALJ was concerned because the evidence was that Willis exhibited certain behaviors and made certain complaints, which were seen and heard by the witnesses, who testified that they had seen and heard them. The ALJ concluded that to find the testimony of these witnesses' to be valid and accurate assessments of the severity of Willis's symptoms was circular reasoning.

The ALJ also found that Willis had not followed the treatment prescribed for fibromyalgia in a medical article written by one of her treating physicians, and that she stopped following the guidelines she received during a six-month program at the OHSU.

The ALJ credited the opinions of two non-treating physicians, Dr. Fraback and Dr. Bonafede, that Willis could perform sedentary work. The ALJ noted that "while multiple lay individuals and two physicians urge that the claimant is incapable of all work activity, there is a clear lack of objective findings to support such stringent restrictions." Tr. at 17. Based on the testimony of a vocational expert, the ALJ concluded that Willis could return to past relevant work on a part-time basis or could transfer her skills to sedentary jobs which are available in a significant number in the national economy. Thus, the ALJ found that Willis was not disabled.

## CONTENTIONS OF THE PARTIES

Willis contends that (1) the ALJ improperly discredited the opinions of her treating physicians that she is disabled; (2) the ALJ discredited her testimony and the testimony of her lay witnesses on improper grounds; and (3) the ALJ improperly concluded that the ability to do part-time work precludes a finding of disability.

The Commissioner contends that the ALJ properly discredited the testimony of Willis and the opinions of her treating physicians. The Commissioner further contends that the ALJ's conclusion that Willis was not disabled because she could perform part-time work complies with the law.

## LEGAL STANDARDS

The Social Security Act (the Act) provides for the payment of disability insurance benefits (DIB) to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).

■ The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater,* 74 F.3d 967, 970 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996) (DIB). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB due to disability. 20 C.F.R. §§ 404.1520; *Lester v.*

*Chater,* 81 F.3d 821, 828 n. 5 (9th Cir.1995) (DIB). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala,* 47 F.3d 348, 349 (9th Cir.1995) (DIB). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. § 404.1520(f).

When an individual seeks DIB because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. § 405(g). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir.1992). It is more than a scintilla, but less than a preponderance, of the evidence. *Id. Gonzalez v. Sullivan,* 914 F.2d 1197, 1200 (9th Cir.1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. *Gonzalez,* 914 F.2d at 1200. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. *Id.* The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *Gomez,* 74 F.3d at 970.

## ANALYSIS AND RULING

The plaintiff, Jeanne Willis, contends that assuming she can work at her former employment on a part-time basis, the ALJ incorrectly concluded that her ability to work at her former employment on a part-time basis precludes a finding of disability.

A person who is presently working at a job which qualifies as substantial gainful activity is not disabled. 20 C.F.R. § 404.1520(b). Part-time work can qualify as substantial gainful activity if sufficient money is earned. *Id.* at § 404.1572(a), § 404.1574; *Katz v. Secretary of Health & Human Servs.,* 972 F.2d 290, 292 (9th Cir.1992). If the claimant has stopped working, however, his or her residual functional capacity is determined by asking whether the claimant can work an eight-hour day. Thus, once a claimant has stopped working, she is considered disabled if she is only able to perform part-time work. *Ratto v. Secretary, Dep't of Health & Human Servs.,* 839 F.Supp. 1415, 1430–31 (D.Or.1993); *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir.1989). This discrepancy is not logical, but it is the law.

The ALJ discredited the subjective testimony of Willis and her family and

friends regarding the severity of her symptoms of pain and fatigue.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen v. Chater,* 80 F.3d 1273, 1281–82 (9th Cir.1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.* at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. *Id.* at 1284.

Willis has produced objective medical evidence of an impairment which can reasonably be expected to produce pain and fatigue. The ALJ discredited this testimony stating that to prove that impairments are disabling there must be laboratory or clinical evidence in addition to subjective complaints. This is not a clear and convincing reason for discrediting Willis' testimony as to the degree of her pain or fatigue. Furthermore, there are no facts in the record which lead to this conclusion. A claimant is not required to produce objective medical evidence of the severity of his/her symptom, as the ALJ believed. Dr. Bennett used clinical means to diagnose Willis' symptoms as fibromyalgia. Willis exhibited pain at the classic tender points, including points which are not widely known except to specialists in the field. Shortly after the supplemental hearing, Dr. Bennett reported that Willis' IGF–1 level, measured in an objective laboratory test, had dropped dramatically over three years. The IGF–1 level is some objective evidence of the severity of her symptoms.

There is no evidence in the record which tends to show that Willis is overstating the severity of her symptoms. Prior to the onset of her disease, Willis was an active, highly motivated, and successful woman. At the time of the hearing, she had not only stopped working, but had given up numerous activities which she had enjoyed, such as frequent socializing and weekly churchgoing. In cases where a claimant is exaggerating her symptoms, there is ordinarily evidence of the claimant taking part in activities that are more enjoyable to him or her than working. These activities would be impossible if the claimant was to be fully believed. That is not the case here. After a careful review of the record, the court is satisfied that the disease, fibromyalgia, has affected Willis to the extent that she claims. There is no contradictory evidence. Accordingly, the court finds that the ALJ improperly discredited the testimony of Willis as to the severity of her symptoms.

The ALJ discredited the opinions of Willis' two treating physicians that she is disabled and accepted the opinions of two non-examining physicians.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a non-examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because he/she has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir.1996). If the opinion of a treating or examining physician is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by the opinion of another physician, the ALJ may not reject the opinion of the treating or examining physician without providing specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. The opinion of a non-examining physician, by itself, is insufficient to con-

stitute substantial evidence to reject the opinion of a treating or examining physician. *Id.* at 831.

The ALJ discredited the opinions of the two treating physicians because the opinions were based on Willis' subjective complaints about her symptoms. The court has concluded that the ALJ improperly discredited the subjective complaints. Thus, the ALJ has not provided specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of the treating physicians that Willis is disabled under the Act.

The court has the discretion to remand this case for additional evidence and findings or to award benefits. *Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir.1996). The court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* The court concludes that the record is fully developed and finds Willis disabled under the Act.

## CONCLUSION

The decision of the Commissioner is reversed. This case is remanded to the Commissioner for an award of benefits.