Richard PELL, Plaintiff,

v.

Kenneth S. APFEL, Commissioner, Social Security Administration,[1] Defendant.

No. CIV. 96–6252–FR.

United States District Court, D. Oregon.

Jan. 8, 1998.

---

1. Kenneth S. Apfel was sworn in as Commissioner of the Social Security Administration on September 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is therefore substituted for Acting Commissioner John J. Callahan as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Kathryn Tassinari, Drew Johnson, Johnson, Cram, Harder & Wells, Eugene, OR, for Plaintiff.

Kristine Olson, United States Attorney, Craig J. Casey, Assistant United States Attorney, Portland, OR, Ben A. Porter, Special Assistant United States Attorney, Seattle, WA, for Defendant.

## OPINION

FRYE, District Judge.

The plaintiff, Richard Pell, brings this action pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying his application for disability insurance benefits and supplemental security income benefits.

## BACKGROUND

Richard Pell filed an application for disability insurance benefits and supplemental security income benefits on December 15, 1993. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Pell, represented by counsel, appeared and testified before an Administrative Law Judge (ALJ) on February 15, 1995, as did other witnesses.

On June 29, 1995, the ALJ issued a decision finding that Pell was not disabled within the meaning of the Act and therefore not entitled to either disability insurance benefits or supplemental security income benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## FACTS

### 1. *Pell's History*

Richard Pell, who was 58 years of age at the time of the hearing before the ALJ, has a tenth-grade education. Pell had worked as a vinyl upholsterer, a cannery worker, and a sales manager for a company that sells light bulbs by telephone. Pell has not worked since November 15, 1993, when he left his job as a vinyl upholsterer because he was afraid that he would kill somebody because of stress.

Pell has had three surgeries on his back. The first was in 1973; the second was in 1980; and the third was in 1985. The pain is in his hips, his left leg, and his hands. He wears braces on both of his wrists. Pell testified that the stress he feels causes him to have no patience, and the lack of patience is even worse than the physical pain from which he suffers. He testified that the pain at the time of the hearing was as bad as it had ever been. Pell does not believe that he can work in telephone sales again because he cannot get along with people well enough for a sales job. He claims that he does not get along with store clerks, with the woman he lives with, or with his neighbors. Pell's activities include carrying wood into the house, vacuuming, washing dishes, watching television, walking, going to the store, and light gardening. Pell testified that he had no friends.

Linda Parker, a woman who had lived with Pell for ten years at the time of the hearing, also testified. Parker testified that Pell seemed to always be in pain and to always be "grumpy." Tr. at 70. She stated that Pell does not get along with people and has a very negative attitude, which worsened when Pell started having additional pain in his back at the time he left his last job.

Pell's last employer reported that Pell maintained average or above average relationships with his co-workers, but that he had "a slight problem with temper control when there were too many people in his work space." Tr. at 183.

### 2. *The Doctor's Reports*

Dr. Lahman, a psychologist, performed a comprehensive psychological evaluation of Pell on December 6, 1993, as an examining physician. Dr. Lahman reported that Pell had borderline intellectual functioning which was not competitive with other adults; that his attention span, concentration, and verbal functioning were also consistently below a competitive level; that he had a very poor fund of information; that he had an extremely limited vocabulary; and that his memory, reasoning ability, and abstract concept development were either defective or borderline and were noncompetitive. Dr. Lahman considered Pell's score on the Minnesota Multiphasic Personality Inventory to be invalid. Dr. Lahman concluded that Pell's increased frustration and irritability caused by pain were not in excess of what would be expected under the circumstances, and that he did not have any diagnosable condition other than borderline intellectual functioning.

Dr. Marlon Fletchall, Pell's treating physician, referred Pell to Dr. Fredric Davis. Dr. Davis examined Pell on October 22, 1993 and concluded that Pell had strained his back by working 52 hours a week as a vinyl upholsterer. He asked Pell to reduce his working hours, to take more breaks at work, and to use over-the-counter pain relievers. Dr. Fletchall examined Pell again on November 10, 1993, and then discussed Pell's medical situation with Dr. Davis, who told Dr. Fletchall that he did not think Pell was completely disabled but that he needed to switch to less physically active work. Pell returned to Dr. Fletchall on November 15, 1993 and reported that he was afraid he would become violent because of his pain. Dr. Fletchall stated that he had to take Pell at his word; therefore, he gave him a medical release, and made an appointment for Pell to see Dr. Davis.

Dr. Davis examined Pell again on November 30, 1993. Pell reported that his leg pain had subsided since discontinuing work as a vinyl upholsterer two weeks earlier. Dr. Davis concluded that Pell could not perform any heavy-duty lifting, carrying, bending, or twisting, but that he could probably do some sort of bench work.

During this time, Dr. Fletchall was treating Pell for depression with various medications. In a mental residual functional capacity evaluation dated February 8, 1995, Dr. Lahman found that Pell was moderately lim-

ited in his ability to understand and remember simple instructions, to carry out detailed instructions, to maintain concentration for extended periods, to interact appropriately with the public, to accept instructions and criticism from supervisors, and to get along with co-workers without exhibiting behavioral extremes. Dr. Lahman considered Pell markedly limited in his ability to work in coordination with others or in proximity to others without becoming distracted, and that Pell could not complete a normal workday without interruptions from psychologically-based symptoms and could not perform at a consistent pace without an unreasonable number of rest periods taken for an unreasonable period of time. Dr. Lahman noted that there was no evidence that Pell's cognitive or behavioral skills had worsened since he left his last job, and Dr. Lahman confirmed that Pell had had several extended periods of employment during the time that his cognitive limitations and anger problems were in existence. Dr. Lahman stated, "My conclusion is that his inability to work was based more on his intolerance of back pain than from intellectual/cognitive limitations." Tr. at 270.

On October 21, 1994, Dr. Alexandre Lockfeld performed nerve conduction studies on Pell and concluded that he had minimal carpal tunnel syndrome on the left side and mild carpel tunnel syndrome on the right side, with possible minimal ulnar neuropathy on the right side as well. He conjectured that there might be another cause as well as the minimal carpal tunnel syndrome to account for the severity of the pain Pell reported.

3. *The ALJ's Decision*

The ALJ noted that while Pell's impairments were severe, they did not, either singly or in combination, meet any of the listed impairments. The ALJ then assessed Pell's residual functional capacity to determine if he was able to perform his former work or other work.

After considering Pell's testimony and the entire record, the ALJ concluded that Pell's contention that he suffers disabling symptoms is unpersuasive. The ALJ found that Pell's daily activities, which include gardening, carrying wood, performing household chores, doing grocery shopping, driving, and taking care of all of his personal needs, were inconsistent with disabling pain. The ALJ also noted that Pell's treating orthopedist, Dr. Davis, and treating general practitioner, Dr. Fletchall, found that Pell's physical restrictions would still allow him to work at jobs other than as a vinyl upholsterer.

The ALJ rejected Pell's testimony as to the severity of the impairment in his hands based on the fact that Pell testified that his hands have improved since he stopped working as a vinyl upholsterer. The doctors' assessments imposed no restrictions on the use of Pell's hands, and the assessments were made after Pell stopped working.

As to Dr. Lahman's assessment of Pell's impairment, the ALJ agreed with Dr. Lahman that there is no evidence to explain why Pell, who used to be mentally capable of working, now claims that he is mentally unable to work. Dr. Lahman based Pell's social limitations in his work place on his pain rather than his mental impairment. Because the ALJ rejected Pell's testimony as to the severity of his pain, the ALJ also rejected this conclusion of Dr. Lahman.

Once the ALJ rejected Pell's testimony as to the severity of his pain, he also rejected Pell's contention that he could not get along with people at work because of extreme pain. The ALJ also noted that Pell had lived with the same woman for ten years, occasionally visited friends and relatives, and had lengthy periods of employment during which he required very little supervision and maintained average relationships with co-workers.

The ALJ concluded that Pell could not perform his past work as a vinyl upholsterer, but that he had the residual functional capacity to perform his past work as a sales manager.

## CONTENTIONS OF THE PARTIES

The plaintiff, Richard Pell, contends: (1) the Commissioner's conclusion that Pell has the residual functional capacity to engage in substantial gainful employment is not based on substantial evidence in the record; (2) the Commissioner did not consider Pell's physical and mental limitations in combination; (3) the Commissioner improperly rejected Pell's

testimony about the severity of his pain; and (4) the Commissioner improperly rejected the examining psychologist's opinion when there was no evidence to the contrary in the record.

The Commissioner denies each of Pell's contentions.

## LEGAL STANDARDS

The Social Security Act (the Act) provides for payment of disability insurance benefits (DIB) to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits (SSI) may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, ⸺ U.S. ⸺, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996) (DIB); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir.1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. 20 C.F.R. §§ 404.1520 and 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir.1995)(DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir.1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir.1995) (DIB); *Drouin*, 966 F.2d at 1257(SSI). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is

such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Drouin,* 966 F.2d at 1257. It is more than a scintilla, but less than a preponderance, of the evidence. *Id.; Gonzalez v. Sullivan,* 914 F.2d 1197, 1200 (9th Cir.1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. *Gonzalez,* 914 F.2d at 1200. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. *Id.* The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *Gomez,* 74 F.3d at 970.

## ANALYSIS AND RULING

### 1. *The Severity of Pell's Pain*

Pell contends that the ALJ erred in rejecting his testimony as to the severity of his symptoms—and in particular the pain from which he suffers.

■ When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen v. Chater,* 80 F.3d 1273, 1281–82 (9th Cir.1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.* at 1282.

■ In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony with regard to the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. *Id.* at 1284.

■ The ALJ noted here that there was objective medical evidence of impairments which could reasonably be expected to produce some degree of pain. The ALJ rejected Pell's testimony concerning the severity of his pain after concluding that the severity of the pain alleged was inconsistent with Pell's daily activities and after noting that neither Dr. Davis nor Dr. Fletchall put limitations on Pell which would preclude him from performing light work. The ALJ also noted that the doctors reported that Pell's pain had improved after he left his job as a vinyl upholsterer. The ALJ made specific findings giving clear and convincing reasons for rejecting Pell's subjective testimony about his physical pain. This court concludes that the rejection was proper.

### 2. *Rejection of the Examining Psychologist's Opinion*

Pell contends that the ALJ improperly rejected the opinion of the examining psychologist, Dr. Lahman, that Pell was markedly limited in some areas.

■ The weight given to the opinion of an examining psychologist depends on whether the psychologist is a treating, an examining, or a nonexamining psychologist. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating psychologist because he or she has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir.1996). If a treating or examining psychologist's opinion is not contradicted by another psychologist or medical doctor, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another psychologist or medical doctor, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. The opinion of a nonexamining physician or psychologist, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Id.* at 831.

The ALJ noted that Dr. Lahman concluded that Pell's complaints concerning his ability to work with others was based on Pell's inability to tolerate the physical pain and not on his pre-existing cognitive limitations. Because the ALJ correctly rejected the testimony as to the severity of the physical pain, his rejection of Dr. Lahman's conclusion as to Pell's social limitations was also correct because the conclusion was without foundation.

In his analysis, the ALJ also considered Pell's physical and mental limitations in combination, as he was required to do. Dr. Lahman concluded that Pell's physical and mental limitations were intertwined.

The court finds that after the ALJ rejected the specified testimony, there is substantial evidence in the record to support the ALJ's finding that Pell had the residual functional capacity to engage in his prior work as a telephone sales manager.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and upon the correct legal standards, and therefore the court affirms the decision of the Commissioner.