Scott E. SORENSEN, Plaintiff—
Appellant,

v.

Jo Anne B. BARNHART, Commissioner, Commissioner, Social Security Administration, Defendant—Appellee.

No. 02–35382.
D.C. No. CV–00–01134–BJR.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 2003.

Decided June 26, 2003.

Before HUG, B. FLETCHER, and McKEOWN, Circuit Judges.

## MEMORANDUM *

Plaintiff–Appellant Scott E. Sorensen appeals from the district court's affirmance of the Social Security Administration's ("SSA") denial of his application for Supplemental Security Income ("SSI") disability benefits. The members of Sorensen's treatment team, including two M.D.s and a licensed therapist, all concluded that his depression, bipolar illness, and affective disorder left him unable to work. However, the four non-treating physicians who examined Sorensen only in connection with his applications for benefits all concluded otherwise. The ALJ credited the testimony of the examining physicians and rejected the testimony and documentary evidence of both Sorensen, himself, and his treatment team, concluding that they were not credible. The district court affirmed the ALJ's decision. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

■ "An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she or he provides 'specific and legitimate' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995)); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). Here, we find that the ALJ failed to carry that burden. The principal reasons he advanced for rejecting the opinions of Sorensen's treatment team in favor of the examining physicians' were as follows:

(1) He found—based on no specific evidence – that the members of the treatment team were "biased advocates" for Sorensen and therefore that their opinions were not credible. We have held explicitly that such findings are inappropriate in the absence of specific evidentiary support. *Lester*, 81 F.3d at 832 (holding that, in the absence of evidence of actual improprieties, "[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits").

(2) He discounted Dr. Pittle's testimony because, although he was Sorensen's treating *physician*, he was not a *psychiatrist*. This Court has likewise held that this is an improper basis for discounting the testimony of a treating physician. *Lester*, 81 F.3d at 833 (rejecting the ALJ's conclusion that the claimant's treating physician's opinion regarding his mental functioning may be disregarded because he is not a mental health specialist, and noting that "the treating physician's opinion as to the combined impact of the claimant's limitations – both physical and mental – is entitled to special weight").

(3) He considered the testimony of Sorensen's therapist [1] only as "lay evidence" because Lippert, who did not possess an M.D. degree or a doctorate, was not an "acceptable medical source" within the meaning of 20 C.F.R. § 416.913(a). This Court has also rejected this rationale. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.) (noting that "[a]cceptable medical sources specifically include licensed physicians and *licensed psychologists*") (emphasis added), *cert. denied*, 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996).

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Lippert is licensed by the State of Washington as a Licensed Mental Health Counselor. He has a master's degree in psychology and, at the time of Sorensen's hearing, had 26 years' experience as a psychotherapist.

(4) He concluded that the Pike Market team's treatment records were inconsistent and contradictory because they contained references to Sorensen's feeling and functioning better at certain times. However, the fact that a patient's symptoms may fluctuate to some degree does not compel the conclusion that the record is "contradictory" as to his disability or that he can consistently function better than the negative reports reflect. Viewed as a whole, Sorensen's treatment records reflect a long and difficult history of depression, bipolar disorder, and poor social functioning. As is often the case, his symptoms sometimes improved in response to, for example, a new medication, but they often worsened or plateaued later.

(5) Finally, the ALJ concluded that there was a lack of "objective evidence" to support the treatment team's conclusions. It is difficult to conceive what "objective evidence" the examining physicians could have had that was not available to, or present in the records of, the doctors who saw Sorensen regularly. As the magistrate judge noted in his report and recommendation ("R & R"), the quest for "objective evidence" becomes more complicated and difficult in the context of mental disabilities. In the absence of the kinds of objective evidence more often present in the context of physical disabilities – test results, a history of medical procedures, or visual manifestations – the ALJ and the magistrate judge turned to Sorensen's outward behavior, as presented at the hearing and documented in the examining physicians' reports, as a source of objective evidence of his condition. While there can be little question that outward behavior is a legitimate source of such evidence, the difficulty is that mental illness may not necessarily be manifested outwardly at any particular time. This is precisely the kind of information that a treating physician who sees a patient over a long period of time is in a better position to assess than an examining physician who sees a patient once and does not have the patient's medical records. *See, e.g., Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987) ("The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual.").

■ The ALJ also erred in concluding that Sorensen's own testimony was not credible. As this Court has explained:

> [T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.... The ALJ's findings, however, must be supported by specific, cogent reasons.... Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.... Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing."... "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."

*Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998) (internal citations omitted). In this case, the ALJ found Sorensen's testimony not credible for reasons that are unsupportable:

(1) He found that Sorensen's testimony was inconsistent with unspecified aspects of his "demeanor at the hearing." This is a generalization not supported by clear and convincing evidence – or, for that matter, any evidence at all.

(2) He found that Sorensen's behavior at his consultative examination with Dr. Sherman in 1996 contradicted his testimony at the hearing about his inability to focus because Sorensen was "engrossed" in a book while he was waiting for his appointment. This is simply not an accurate characterization of the evidence. Dr. Sherman merely reported that Sorensen "[came] to the appointment with a book, and [was] reading before being seen." In light of Sorensen's testimony that he struggled with reading due to his inability to concentrate, the fact that he was seen carrying and apparently reading a book while waiting for the doctor in no way suggests that his testimony was not credible.

(3) The ALJ also found Sorensen's report of his daily activities to be inconsistent with his assertion that he was unable to work. Although Sorensen reported that he rides a public bus six times per week, helps take care of his girlfriend's three-year-old grandchild, and sometimes performs household tasks, these limited activities do not suggest that he has the concentration to perform and complete tasks consistently, as required for employment.

(4) Finally, the ALJ found that Sorensen was "inherently" not credible because of his history of drug addiction and his criminal record. This is irrelevant to the issue of whether Sorensen was providing a truthful account of his symptoms at his disability hearing.

In short, we find that the record before the ALJ does not support his rejection of either Sorensen's testimony or that of his treatment team. Because the record is adequate to establish Sorensen's mental disabilities, we see no need to remand for development of the record in that respect.

However, the record *is* devoid of any vocational evaluation as to Sorensen's ability to perform either (a) his past work or (b) other work in the national economy. The ALJ is not *required by law* to consult a vocational expert in assessing whether an applicant can perform his past work. *See Crane v. Shalala,* 76 F.3d 251, 255 (9th Cir.1996). However, in light of the nonexertional and mental health-related nature of Sorensen's disabilities, we suggest that it may be very helpful to do so here. Accordingly, we reverse and remand for further development of the record as to steps 4 and 5 of the disability benefits analysis: Sorensen's ability to perform either his past work or any other work in the national economy.

REVERSED AND REMANDED.