Carlos **VITELA, Plaintiff–Appellant,**

v.

**COMMISSIONER OF the SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.**

**No. 04–56790.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 8, 2006.*

Filed Aug. 23, 2007.

---

Southern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Troy D. Monge, Esq., Law Offices of Martin Taller, Anaheim, CA, for Plaintiff–Appellant.

Katherine R. Loo, Social Security Administration, Office of the General Counsel, San Francisco, CA, for Defendant–Appellee.

Before: BEEZER, WARDLAW, and PAEZ, Circuit Judges.

MEMORANDUM **

Carlos Vitela appeals the decision of the magistrate judge denying his claim to disability insurance and supplemental security income benefits. The parties are familiar with the facts, and we do not repeat them here.

I

Substantial evidence supports the decision of the administrative law judge ("ALJ") that Vitela retained the ca-

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

pacity to perform light exertional-level work. The ALJ provided specific and legitimate reasons to discount the opinion of a treating physician regarding Vitela's physical limitations. *See Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1996). As we have held, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002). The ALJ also appropriately rejected medical reports from three Department of Social Services physicians to the extent that they relied on Vitela's subjective pain complaints. When physicians' opinions differ, greater weight is generally given to specialist opinions. *See* 20 C.F.R. § 404.1527(d)(5). The ALJ's conclusion that these reports were contrary to the record is supported by substantial evidence, including a treating orthopedist's opinion (Dr. McCann), a consulting specialist's opinion (Dr. Bleecker), and a vocational feasibility study. The reasons given by the ALJ to discount evidence of Vitela's mental limitations were likewise specific and legitimate. *See Thomas,* 278 F.3d at 957; *Lester,* 81 F.3d at 830.

█ Substantial evidence also supports the ALJ's decision that Vitela did not suffer from a significant non-exertional limitation that would preclude reliance on the grids. *See Tackett v. Apfel,* 180 F.3d 1094, 1102 (9th Cir.1999) (noting "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids") (citation omitted).

## II

█ The ALJ identified sufficiently specific and cogent reasons to discount the testimony of Vitela and his wife regarding Vitela's subjective complaints, including inconsistencies between their testimony and other areas of the record. *See Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir.2006).

**AFFIRMED.**

PAEZ, Circuit Judge, dissenting:

I respectfully dissent. As I explain below, I would reverse and remand for further proceedings before the ALJ.

In order to establish disability,[1] Vitela needed to show that he was unable to do light exertional work for at least 12 consecutive months during the relevant time period, from February 1992 to December 1997. The ALJ, however, rejected all the evidence that Vitela had to offer. He rejected Vitela's testimony and Vitela's wife's testimony. He rejected the medical opinion of the physician who treated Vitela for the longest period of time, and the medical opinion of Vitela's treating psychologist. He also rejected the medical opinions of three doctors for the Department of Social Services ("DSS"). Instead, the ALJ relied solely upon medical evidence from the first year of, and from after, the relevant time period.

Of course, under our case law, the ALJ was entitled to do so, so long as he provided sufficient reasons supported by substantial evidence for rejecting the evidence that supported Vitela's claim. I agree with the majority that the ALJ provided "clear and convincing" and "germane" reasons, respectively, for finding that Vitela and his wife were not credible witnesses. I also agree with the majority that the ALJ gave "specific and legitimate rea-

---

1. As the ALJ found, Vitela suffered from "diabetes mellitus, hypertension, a history of an affective disorder, and a history of a lumbar laminectomy and discectomy in February 1991."

sons"[2] supported by substantial evidence, for not giving controlling weight to the medical opinions of Vitela's primary treating physician, Dr. Linares, and treating psychologist, Dr. Konstat. I cannot agree, however, with the majority's conclusion that the ALJ provided sufficient reasons for rejecting the medical opinions of the three DSS doctors.[3] The ALJ provided two reasons for rejecting these medical opinions: (1) the three DSS doctors based their opinions on Vitela's exaggerated pain reports; and (2) their opinions were contrary to the overall record. Neither of these reasons is legitimate, because neither is supported by substantial evidence.

First, contrary to the ALJ's determination, the record unequivocally establishes that the three DSS doctors based their medical opinions on objective medical evidence, *not* Vitela's subjective pain reports. DSS physician Dr. Scotty examined Vitela and prepared a medical report on July 30, 1993. Dr. Scotty reviewed an MRI scan that revealed a swollen and distorted nerve root in the lumbar spine. Dr. Scotty also conducted a physical examination, during which he assessed Vitela's muscle strength and flexibility and neurological functioning. In his report, Dr. Scotty separated his own objective findings from Vitela's brief self-report of his subjective complaints. At the beginning of the report, under "History of Present Illness," Dr. Scotty noted that *"The patient states* that he had herniated lumbar discs and underwent lumbar laminectomy in 1990." (Emphasis added). After describing in detail the results of the physical examination and MRI review, however, Dr. Scotty concluded that *"Based on today's objective physical exam* this patient is limited . . . to standing and walking no more than four to five hours of an eight hour day"—a limitation that precludes light exertional work. (Emphasis added). Thus, Dr. Scotty expressly based his opinion on objective medical evidence, not Vitela's subjective complaints.

In his September 19, 1995 report, DSS examining physician Dr. Schatz also separated his own objective medical findings from Vitela's subjective complaints. Like Dr. Scotty, Dr. Schatz listed Vitela's subjective complaints under "History of Present Illness," noting that Vitela *"states* that back surgery did not help at all" and *"indicates* that he has numbness in his soles and left hand." (Emphases added). But also like Dr. Scotty, after conducting a physical examination, Dr. Schatz reported his own objective opinion, stating that Vitela *"can* stand and walk, mainly the former, approximately four to five hours with normal breaks." (Emphasis added).

Finally, the third DSS doctor, a reviewing physician, filled out a report on October 3, 1995, which directed him: (1) to "Base [his] conclusions on **all evidence** in the file (clinical and laboratory findings;

---

**2.** "Specific and legitimate," as opposed to "clear and convincing," reasons were sufficient in the instant case because Dr. Linares's and Dr. Konstat's opinions were contradicted by the opinions of other doctors in the record. *See Orn v. Astrue,* 495 F.3d 625, 631–32 (9th Cir.2007).

**3.** Because two of the DSS doctors were examining physicians, whose opinions were contradicted by other doctors, the ALJ had to provide specific and legitimate reasons for rejecting their opinions. *See Widmark v. Barnhart,* 454 F.3d 1063, 1066 (9th Cir.2006)

("The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." (alteration and internal quotation marks omitted)). Further, the ALJ had to provide at least some reason supported by substantial evidence for rejecting the opinion of the reviewing DSS physician. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

symptoms; observations; lay evidence; reports of daily activities; etc.)"; (2) to report the limitations that "reflect [his] **reasoned judgment**"; and (3) to "Describe how the **evidence substantiates [his] conclusions**. (Cite specific clinical and laboratory findings, observations, lay evidence, etc.)." (Emphases in original). Accordingly, the doctor concluded that Vitela could "Stand and/or walk (with normal breaks) at least 2 hours in an 8–hour workday" and "probably up to 4 hrs/day"—once again, a finding that precludes light exertional work. Directed to explain "how and why the evidence" and "specific facts" supported this conclusion, the doctor referenced only objective medical findings: (1) Vitela's surgery ("a lumbar discectomy"); (2) the resulting nerve damage ("L5–S1 Sciatica"); (3) MRI-revealed "epidural fibrosis"; and (4) the flexion ranges and pain revealed by the physical examinations.

Because the reports from these three doctors were unquestionably "supported by objective findings" and not "based on an exaggerated medical history," contrary to the ALJ's determination, substantial evidence does not support the ALJ's first reason for rejecting the doctors' opinions.

The only other reason that the ALJ gave for rejecting these opinions was that they were "contrary to the overall evidence of record." The three DSS doctors, along with Dr. Linares, however, made the *only* relevant medical findings from March 1993 to 1998, and each found that Vitela was not capable of light exertional work. As mentioned, the only evidence arguably contrary to these findings was from before March 1993—*i.e.*, at the very beginning of the relevant time period—or from after 1998—*i.e.*, after the relevant time period.[4] Because no doctor rendered an opinion contrary to the DSS doctors' opinions within this five-year period, I cannot conclude that substantial evidence supports the ALJ's determination that these opinions were contrary to the overall record evidence. Consequently, in my view substantial evidence does not support the ALJ's finding that there was no 12–month period from 1992 to 1997 during which Vitela was incapable of performing light exertional work.[5]

Because substantial evidence does not support this finding, I would remand for further proceedings to determine whether Vitela was disabled given that he was unable to perform light exertional work for at least one year during the relevant time period.

---

4. Specifically, from 1990 to February 1993, treating physician Dr. McCann reported that Vitela was permanently restricted from heavy lifting—a finding consistent with light exertional work. An Agreed Medical Examiner for Worker's Compensation made similar findings in 1992. Then, in December 1999—almost seven years and five doctors later, and well after the relevant time period—another treating physician made findings consistent with light exertional work.

5. Contrary to the majority's conclusion, the ALJ recognized that the vocational feasibility study did not support his light exertional work finding. The ALJ relied on the study only to find Vitela and his wife not credible, because the study, unlike Vitela's and his wife's testimony, suggested that Vitela could perform *sedentary work*. The ALJ then expressly rejected the study, because it suggested, at least to some extent, that Vitela could *not* perform light exertional work.