NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 14 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CAROLINA PEREZ,

No.   20-35092

Plaintiff-Appellant,

D.C. No. 1:19-cv-03107-MKD

v.

ANDREW M. SAUL, Commissioner of
Social Security,

MEMORANDUM*

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, Magistrate Judge, Presiding

Argued and Submitted March 4, 2021
San Francisco, California

Before:  BALDOCK,** WARDLAW, and BERZON, Circuit Judges.

Carolina Perez appeals the district court's decision affirming the

administrative law judge's ("ALJ") denial of her application for disability insurance

benefits under Title II of the Social Security Act.  *See* 42 U.S.C. §§ 201–234.  We

---

    *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    **    The Honorable Bobby R. Baldock, United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

review de novo the district court's order upholding the denial of Social Security benefits and will reverse if "the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012)). We conclude the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for discounting the opinions of treating and examining physician. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). We also hold that the ALJ erred in its assessment of Perez's symptom testimony. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for an award of benefits.

1. First, the ALJ erred by assigning "little weight" to the medical opinions provided by at least three of the four treating physicians and one examining physician.[1] The medical opinions of a claimant's treating doctors must be given "controlling weight" so long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the claimant's] case record." *Revels v. Berryhill*, 874

---

[1] We do not address whether the ALJ erred in assigning little weight to the opinion of Perez's treating neurosurgeon, Dr. Michelle Chowdhary, because the other treating doctors' opinions and the examining doctor's opinion provide ample evidence to support a finding of disability.

2

F.3d 648, 654 (9th Cir. 2017) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Where a treating doctor's opinion is uncontradicted, it can be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick*, 157 F.3d at 725 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). And even if a treating physician's conclusions are contradicted by another doctor's opinion, the ALJ may reject the conclusions only if it provides specific and legitimate reasons, supported by substantial evidence, for doing so. *Revels*, 874 F.3d at 654. In the same way, an examining physician's opinion is entitled to greater weight than an opinion of a non-examining physician. *Lester*, 81 F.3d at 830. "[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

Here, although the ALJ did not explicitly so state, the opinions of three treating physicians and one examining physician were contradicted by the conclusions reached by non-examining source Dr. Norman Staley, the agency's own medical consultant. Because the opinions of treating and examining doctors should be given more weight than the opinions of doctors who do not treat the claimant, the ALJ was required to provide "specific and legitimate reasons," supported by substantial evidence, for discounting the four treating and examining sources'

3

opinions. *See id* at 830. The ALJ did not do so.

a. First, the ALJ erred by giving "little weight" to the opinion of Perez's treating gynecologist, Dr. Jessica Bury. Dr. Bury opined that Perez suffers from spina bifida, with bladder, back, and leg complications; vesicoureteral reflux; congenitally atrophic/marginally functional kidney; and malformation of her right foot and toes. Dr. Bury stated that due to her pain, Perez has to lie down for more than two hours a day, depending on the activity. Work on a regular and continuous basis, Dr. Bury explained, would cause her condition to deteriorate. Dr. Bury estimated that Perez would miss four or more days of work each month.

The ALJ gave little weight to Dr. Bury's opinion because "the record does not support the limitations in it." To reach this conclusion, the ALJ relied on a treatment note from June 2017 indicating Perez's back pain had improved and that her gait was "intact." The ALJ also relied on a treatment note from July 2017 explaining that Perez was "ambulatory," "nontoxic appearing," and "hemodynamically stable without evidence of sepsis." Finally, the ALJ relied on treatment notes indicating Perez was "doing well" after each foot surgery.

These treatment notes do not provide specific and legitimate reasons for discounting Dr. Bury's opinion because these cherry-picked statements do not reflect the diagnostic record as a whole. For example, the ALJ failed to note that the June 2017 treatment notes also state that Perez's "pain is worse with bending over

4

and prolonged walking," that she still self-catheters every three to four hours, and that she experiences decreased sensation "bilaterally to lower legs" and "complete numbness to [her] entire [left] foot."

Further, the ALJ's assessment of the July 2017 treatment notes do not reflect the context in which they arose. In that instance, Perez went to the emergency room in response to a 103-degree fever and another UTI. The mere fact that she could walk and was not septic on that occasion does not negate Dr. Bury's findings regarding Perez's overall condition. And treatment notes from a few months later—wherein Dr. Bury observed that Perez looked fatigued and tearful, her right foot was swollen, her toe folded over, and she had gait imbalance and recurrent UTIs—corroborate the conclusions reached in Dr. Bury's medical report.

Finally, the treatment notes following Perez's third foot surgery indicate some positive progress, but the ALJ failed to mention that amidst the purported progress, Perez underwent another surgery—this time on both feet. Thus, the observation that Perez was "doing well" must be viewed in the context of having multiple operations on her feet in a six-month span. Moreover, in August 2017, nearly a year later, Perez was "still having lots of issues even after foot surgery." Her toes were "overlapping again" and her foot remained swollen. These treatment notes are consistent with Dr. Bury's conclusion that Perez would need to lie down two or more hours each day due to foot and leg pain. Accordingly, the ALJ erred in giving little weight to Dr.

5

Bury's opinion.

b. The ALJ also erred in giving little weight to the conclusions of Perez's treating podiatrist, Dr. Jared Clifford. Dr. Clifford opined that Perez suffered from spina bifida, pes cavus, and foot joint contractures. He explained that Perez had undergone multiple foot surgeries and that these would likely be lifelong issues. He ultimately concluded that if Perez's work involved "prolonged standing and walking" it would cause her condition to deteriorate. He estimated that Perez would likely miss two days of work each month for "pain in feet due to prolonged weight bearing."

The ALJ discounted Dr. Clifford's opinion for the same reasons it disregarded Dr. Bury's opinion. That is, the ALJ concluded that "the record does not support the limitations" identified by Dr. Clifford. The ALJ again relied upon the June 2017 treatment notes, the July 2017 treatment notes, and the treatment notes following Perez's third foot surgery. For the same reasons provided above, these treatment notes do not provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Clifford's opinion. Additionally, the June 2017 and July 2017 records concern a neurological evaluation and an emergency care note for a UTI. These notes have little bearing on a podiatrist's assessment of Perez's physical limitations. The ALJ thus erred in affording Dr. Clifford's opinion little weight.

c. Third, the ALJ erred in giving little weight to the opinion of Perez's

6

urologist, Dr. Norman Shively. Dr. Shively estimated that Perez would miss one day of work per month due to her recurring UTIs. And although Dr. Shively concluded that work would not cause Perez's condition to deteriorate, he explained she would need to self-catheter four to five times each day.

The ALJ gave little weight to Dr. Shively's opinion because "the evidence in the record does not support that the claimant would miss one day of work per month." In discounting Dr. Shively's opinion, the ALJ again relied upon the July 2017 emergency room treatment note, wherein Perez was described as "nontoxic" and "without evidence of sepsis or instability." This single treatment note is not a specific and legitimate reason, supported by substantial evidence, for discrediting Dr. Shively's opinion. Dr. Shively had treated Perez for over a decade, and there is ample evidence in the record to support his conclusions regarding Perez's urinary conditions. For example, in December 2016, he noted that Perez "has a history of vesicoureteral reflux disease and chronic left pyelonephritis. She has a small poorly functioning left kidney with chronic pain and recurrent [UTIs]." Even after her hysterectomy and removal of her left kidney—procedures aimed at alleviating her urinary conditions—Perez continued to experience frequent UTIs. Despite attempting Botox injections of the bladder, she still made regular doctors' visits to address her neurogenic bladder. And with respect to the July 2017 emergency room visit, though she was non-septic, she had a 103-degree fever as a result of the UTI.

7

Therefore, the ALJ erred in discounting Dr. Shively's well-supported opinion based on some language in a single emergency room record.

d.  Finally, the ALJ erred in affording the opinion of examining physician, Dr. William Drenguis, little weight.  Dr. Drenguis completed a physical evaluation of Perez on June 15, 2016, several weeks after she underwent surgery on her left foot. Dr. Drenguis ultimately opined that, due to her spina bifida, Perez could stand and walk for "at least two hours" and could sit for "at least four hours."

The ALJ discounted Dr. Drenguis's opinion because it was "based on a one-time examination of the claimant, which took place only two weeks after the claimant had foot surgery."  This is not a specific and legitimate reason for discrediting Dr. Drenguis's conclusions.  The fact that an evaluator examines a claimant only one time is not a legally sufficient basis for rejecting the opinion.  The applicable regulations instruct that all opinions, including those from non-treating, examining providers, should be considered.  *See* 20 C.F.R. § 404.1527(b), (c).  And while the length of the treatment relationship and frequency of examination is one factor to consider, *see id.* § 404.1527(c)(2)(i), this basis for discounting Dr. Drenguis's opinion is particularly troubling because the ALJ gave "substantial weight" to the opinion of Dr. Staley, who *never* examined Perez, *see Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (explaining that "the opinion of an examining physician is entitled to greater weight than that of a non-examining

physician"). Moreover, Dr. Drenguis's report explicitly recognized the limitations that were caused by Perez's recent foot surgery as separate from Perez's day-to-day limitations, which primarily stem from her lifelong struggle with spina bifida.

The ALJ also discounted Dr. Drenguis's conclusions because his examination of Perez, during which Dr. Drenguis observed that Perez sat comfortably, did not support limiting Perez's ability to sit to four hours. The ALJ noted that Perez was able to stand up from a chair and get on a table without help during Dr. Drenguis's evaluation. Neither of these observations, however, are specific and legitimate reasons for discrediting Dr. Drenguis's opinion. First, there is no evidence that Dr. Drenguis examined Perez in a seated position for four hours or that the exam took anywhere near four hours to complete. The ALJ thus perceived an inconsistency that the record does not support. Moreover, Perez's ability to stand from a seated position and get on an examination table without help does not contradict Dr. Drenguis's other findings and conclusions. Accordingly, the ALJ erred in affording Dr. Drenguis's opinion little weight.

2. The ALJ also erred in its assessment of Perez's symptom testimony. ALJs must follow a two-step analysis in determining the extent to which a claimant's symptom testimony should be credited. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be

9

expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014). If the claimant meets that burden, then, "[u]nless there is affirmative evidence showing that the claimant is malingering," the reasons for "rejecting the claimant's testimony must be 'clear and convincing.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1015).

a. Here, the ALJ concluded that Perez's "described daily activities . . . are inconsistent with her complaints of disabling symptoms and limitations." It is true that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). But we have "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016.

Perez's daily activities include cleaning, preparing meals, doing laundry, driving, shopping, handling money, helping with dishes, and childcare. Her childcare duties involve watching movies, playing on an iPad, and coloring with her kids. None of these activities are inconsistent with her symptoms. Nor are they

10

comparable to what would be required by a job, particularly when considered in context. To that end, Perez explained that she can prepare meals that take 20 to 30 minutes to make but sometimes needs breaks to sit down. She also testified that she can do some cleaning but cannot mop or sweep. While she can drive, she has to get out of the car every 20 minutes to stretch. And when she shops, she has to use a pushcart. These activities all include breaks and support, and her ability to engage in these activities does not contradict her testimony about her symptoms. Moreover, Perez's activities with her children—watching movies, playing on an iPad, and coloring—are not skills that are transferable to the workplace. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding that "reading, watching television, and coloring in coloring books are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace"). Therefore, the ALJ erred in discounting Perez's symptom testimony based on her activities of daily life.

b. The ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but discounted her statements about the intensity, persistence and limiting effects of those symptoms because "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." The ALJ's reasoning flipped the applicable standard on its head. Because there is no

evidence of malingering, the ALJ needed clear and convincing evidence to *discount* Perez's testimony, not "strong support" from the medical evidence to credit it. *See Reddick*, 157 F.3d at 722. The ALJ's error in framing the standard is not harmless, as the evidence the ALJ used to dispute Perez's testimony is not clear and convincing.

Perez testified that she suffers from back pain, numbness and pain in her legs, incontinence, and frequent UTIs. On bad days, which occur two to three times a month, she cannot put on shoes to leave the house and has to lay on her side or stomach and elevate her legs for five to six hours of the day. While the ALJ cherry-picked certain evidence to contradict Perez's statements, her testimony aligns with "the overall diagnostic record." *See Ghanim*, 763 F.3d at 1164 (explaining that treatment notes showing some signs of improvement do not negate the claimant's testimony when the record is viewed as a whole). Although the ALJ is correct that Perez's spine had no acute fracture or dislocation, her gait was sometimes reported as normal, and on one occasion she appeared "nontoxic" and "without evidence of sepsis," she nonetheless suffers from spina bifida (which has manifested damage to her feet, legs, and back), and she still endures frequent and severe UTIs, sometimes requiring emergency treatment. Accordingly, looking at "the overall diagnostic record," the ALJ erred in discounting Perez's symptom testimony. *See id.*

3. Having concluded that the ALJ committed reversible error in discounting

12

both the treating and examining doctors' opinions, as well as Perez's symptom testimony, the remaining question is whether to remand for further proceedings or for an immediate award of benefits. Typically, remand for further administrative proceedings is appropriate if development of the record would be helpful. *Benecke v. Barnhart*, 379 F.3d at 587, 593 (9th Cir. 2004). On the other hand, we remand for an award of benefits when

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand . . . .

*Trevizo*, 871 at 682–83 (quoting *Garrison*, 759 F.3d at 1020).

In this case, the evidence is substantial. The record includes medical history describing Perez's countless treatments and procedures; notes from doctor visits, emergency room visits, and therapy; opinions from six physicians, including four treating physicians, one examining physician, and one non-examining physician; and extensive testimony from Perez. For the reasons stated herein, the ALJ provided legally insufficient reasons to discount the medical evidence and Perez's symptom testimony. If the ALJ had credited the evidence as it should have, it would be required to find Perez is disabled under Title II of the Social Security Act. We therefore see no useful purpose in remanding for further proceedings.

Accordingly, we **REVERSE** the judgment of the district court with

13

instructions to remand to the Commissioner of Social Security for the calculation

and award of benefits.